Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 27, 2017

**2017 CO 14**

**No. 15SA340, In Re Ferrer—Tort—Respondeat Superior Liability—Direct Negligence.**

In this original proceeding under C.A.R. 21, the supreme court reviews trial court orders dismissing the plaintiff's direct negligence claims against an employer where the employer acknowledged vicarious liability for its employee's negligence, and denying the plaintiff's motion for leave to amend her complaint to add exemplary damages against the employer and the employee.

The supreme court adopts the rule articulated in McHaffie v. Bunch, 891 S.W.2d 822 (Mo. 1995), which holds that an employer's admission of vicarious liability for an employee's negligence bars a plaintiff's direct negligence claims against the employer. The supreme court declines to adopt an exception to this rule where the plaintiff seeks exemplary damages against the employer. The court concludes that the trial court did not err in dismissing the plaintiff's direct negligence claims against the employer or in denying the plaintiff's motion for leave to amend the complaint to add exemplary damages. The supreme court therefore affirms the trial court orders and discharges the rule to show cause.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 14

**Supreme Court Case No. 15SA340**
*Original Proceeding Pursuant to C.A.R. 21*
Denver County District Court Case No. 14CV32745
Honorable Andrew P. McCallin, Judge

**In Re**

**Plaintiff:**

Jessica Ferrer,

v.

**Defendants:**

Tesfamariam Okbamicael and Colorado Cab Company, L.L.C.

**Rule Discharged**
*en banc*
February 27, 2017

**Attorneys for Plaintiff:**
Leventhal & Puga, P.C.
Benjamin I. Sachs
James E. Puga
Alex Wilschke
Bruce Braley
  *Denver, Colorado*

The Buxton Law Firm
Tim Buxton
  *Colorado Springs, Colorado*

**Attorneys for Defendants:**
Jaudon & Avery LLP
David H. Yun
Jared R. Ellis
  *Denver, Colorado*

**Attorneys for Amici Curiae Colorado Defense Lawyers Association and Colorado Civil Justice League:**
Fennemore Craig, P.C.
Troy Rackham
  *Denver, Colorado*

Taylor |Anderson LLP
Lee Mickus
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Trial Lawyers Association:**
Cross & Bennett, L.L.C.
Joseph F. Bennett
  *Colorado Springs, Colorado*

**Attorneys for Amicus Curiae Copic Insurance Company:**
Davis Graham & Stubbs LLP
Shannon Wells Stevenson
Kyle W. Brenton
  *Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.
**JUSTICE GABRIEL** dissents, and **CHIEF JUSTICE RICE** and **JUSTICE HOOD** join in the dissent.

¶1 In this original proceeding under C.A.R. 21, we address whether an employer's admission of vicarious liability for an employee's negligence in response to a plaintiff's complaint forecloses a plaintiff's additional, direct negligence claims against the employer.

¶2 Plaintiff Jessica Ferrer and her companion, Kathryn Winslow, were injured when a taxicab driven by Tesfamariam Okbamicael struck them as they crossed a street in Denver, Colorado. Okbamicael worked for Colorado Cab Company ("Yellow Cab"), which owned the taxicab. Ferrer[1] brought this suit against Okbamicael and Yellow Cab (collectively, "Defendants"), alleging that Okbamicael was negligent and that Yellow Cab was vicariously liable for his negligence under the doctrine of respondeat superior. Ferrer also alleged that Yellow Cab was liable for her injuries suffered in the collision under theories of direct negligence, namely, negligence as a common carrier and negligent entrustment, hiring, supervision, and training.

¶3 In an amended answer to the complaint, Yellow Cab admitted that Okbamicael was an employee acting within the course and scope of his employment with Yellow Cab at the time of the accident. Defendants then moved for partial judgment on the pleadings, seeking to dismiss Ferrer's direct negligence claims against Yellow Cab. The trial court granted Defendants' motion, applying the rule articulated in McHaffie v. Bunch, 891 S.W.2d 822 (Mo. 1995), that an employer's admission of vicarious liability

---

[1] Winslow was a co-plaintiff in this action but settled her claims against Okbamicael and Yellow Cab. This court granted the parties' joint stipulated motion to dismiss Winslow from the case under C.A.R. 42.

for an employee's negligence bars a plaintiff's direct negligence claims against the employer.

¶4 Ferrer later moved to amend the complaint to add exemplary damages against both Okbamicael and Yellow Cab. The trial court denied Ferrer's motion because Ferrer failed to allege evidence of willful and wanton conduct by Okbamicael or by Yellow Cab sufficient to establish prima facie proof of a triable issue of exemplary damages, as required by section 13-21-102(1.5), C.R.S. (2016).

¶5 Ferrer petitioned for relief under C.A.R. 21, asking this court to vacate the trial court's orders dismissing her direct negligence claims against Yellow Cab and denying her motion to amend the complaint to add exemplary damages against Okbamicael and Yellow Cab. Ferrer likewise sought relief from the trial court's orders denying her motions for reconsideration.

¶6 We issued a rule to show cause to review the trial court's orders.[2] We now discharge the rule.

## I. Facts and Procedural History

¶7 At approximately 10:40 p.m. on July 15, 2011, Okbamicael struck Ferrer and Winslow with his taxicab as they crossed an intersection in lower downtown Denver. Ferrer sustained significant injuries as a result of the collision.

¶8 In July 2014, Ferrer filed suit against Okbamicael and Yellow Cab, seeking damages for the injuries she suffered in the collision. Ferrer asserted claims against

---

[2] In her C.A.R. 21 petition, Ferrer also sought mandamus relief from this court to permit discovery of Yellow Cab's investigative records. Yellow Cab later made its investigative records available to Ferrer. Consequently, this issue is moot.

4

Okbamicael for negligence and negligence per se. She also alleged that Yellow Cab was liable for Okbamicael's negligence under the doctrine of respondeat superior. Finally, she asserted direct negligence claims against Yellow Cab, specifically, negligence as a common carrier, negligent entrustment, negligent hiring, negligent retention/ supervision, and negligent training.

¶9 Yellow Cab initially denied allegations in Ferrer's complaint that Okbamicael was an employee and instead asserted that he operated the taxicab as an independent contractor. Defendants later filed an amended answer, however, to admit that Okbamicael was an employee and that he was operating the taxicab within the course and scope of his employment with Yellow Cab at the time of the accident.

¶10 After filing their amended answer, Defendants moved in December 2014 for partial judgment on the pleadings, seeking dismissal of the direct negligence claims against Yellow Cab (negligence as a common carrier, negligent entrustment, negligent hiring, negligent retention/supervision, and negligent training). Defendants argued that under the McHaffie rule followed in other jurisdictions, direct negligence claims against an employer are barred where the employer has acknowledged the employee was acting within the course and scope of his employment at the time of the alleged tort.

¶11 On March 6, 2015, the trial court granted Defendants' motion for partial judgment on the pleadings and dismissed Ferrer's direct negligence claims against Yellow Cab. It simultaneously entered a protective order to preclude discovery regarding Okbamicael's hiring, supervision, retention, and training. The trial court

5

noted that although no Colorado appellate court had addressed this issue, it was persuaded by several rulings by state and federal trial courts applying the McHaffie rule.

¶12    Ferrer moved for reconsideration, arguing that the McHaffie rule is inapplicable in a comparative fault jurisdiction such as Colorado.  The trial court denied Ferrer's motion, reasoning that Ferrer "failed to demonstrate how the [trial court's] ruling is inconsistent with Colorado's adoption of comparative negligence."

¶13    Five months later, in August 2015, Ferrer moved to amend the complaint to add exemplary damages against both Okbamicael and Yellow Cab under section 13-21-102.  As evidence of Defendants' willful and wanton conduct, Ferrer alleged that at the time of the collision, Okbamicael was driving in excess of the speed limit, was talking on his cell phone in violation of company policy, and had been driving more than ten hours in violation of Public Utilities Commission ("PUC") regulations.  In addition, Ferrer alleged that Yellow Cab knew before the incident that Okbamicael was a "habitual hours of service violator"; that Yellow Cab intentionally destroyed its drivers' trip sheets; and that Yellow Cab "forced" its drivers to use cell phones by not using a dispatch system at the airport.  Ferrer indicated that she would request a spoliation instruction regarding Yellow Cab's destruction of the trip sheets.

¶14    Defendants opposed Ferrer's motion to amend as untimely,[3] and argued that Ferrer's late amendment to the complaint would significantly prejudice Defendants by

---

[3] Relying on C.R.C.P. 16(b)(8), Defendants contended that the deadline to amend the complaint was December 4, 2015.  Defendants re-raised this point in oral arguments

requiring additional discovery and further delaying trial. Defendants also objected on grounds that Ferrer failed to set forth prima facie proof of a triable issue of exemplary damages, as required by section 13-21-102(1.5)(a).

¶15    Following a hearing, the trial court denied Ferrer's motion to amend the complaint to add exemplary damages. The trial court reasoned that Ferrer's allegations that Okbamicael was speeding and talking on his cell phone did not constitute willful and wanton conduct justifying punitive damages. The court further concluded that Ferrer's allegations that Yellow Cab destroyed Okbamicael's time sheets and that Okbamicael exceeded a ten-hour-maximum-driving-time rule on the day of the accident failed to establish prima facie evidence of willful and wanton conduct by Yellow Cab. Because PUC regulations require trip sheets to show the hours a driver was on duty, not his actual driving time, the missing trip sheets would not have shed light on Ferrer's contention that Okbamicael drove more than ten hours on the day of the accident. The trial court observed that Ferrer's allegations against Yellow Cab required "a lot of leaps of faith and a lot of connecting of inferences" and concluded that Ferrer had failed to establish prima facie proof of a triable issue of exemplary damages. The court therefore denied Ferrer's motion for leave to amend the complaint, and later denied Ferrer's motion for reconsideration.

¶16    Ferrer petitioned for relief under C.A.R. 21, asking this court to vacate the trial court's orders granting Defendants' motion for partial judgment on the pleadings and

---

before this court but did not address it in their briefing. In any event, it appears from the case management order deadlines that Ferrer timely filed the motion.

7

dismissing Ferrer's direct negligence claims against Yellow Cab, denying Ferrer's motion for leave to amend the complaint to add exemplary damages claims, and denying reconsideration of those rulings. We issued an order to show cause and now discharge the rule.

## II. Original Jurisdiction

¶17 Original relief under C.A.R. 21 is an extraordinary remedy limited in purpose and availability. People v. Darlington, 105 P.3d 230, 232 (Colo. 2005). Our exercise of this extraordinary jurisdiction is discretionary. Fognani v. Young, 115 P.3d 1268, 1271 (Colo. 2005). We have exercised original jurisdiction to review pretrial orders issued by trial courts that "will place a party at a significant disadvantage in litigating the merits of the controversy." People v. Dist. Court, 664 P.2d 247, 251 (Colo. 1983) (quoting Sanchez v. Dist. Court, 624 P.2d 1314, 1316 (Colo. 1981)). We also generally exercise original jurisdiction under C.A.R. 21 in cases that raise issues of first impression and are of significant public importance. Stamp v. Vail Corp., 172 P.3d 437, 440 (Colo. 2007).

¶18 This court has not addressed whether an employer's admission of vicarious liability for an employee's negligence in response to a plaintiff's complaint forecloses a plaintiff's additional, direct negligence claims against the employer. Because this case presents an important issue of first impression, we conclude that exercise of our original jurisdiction pursuant to C.A.R. 21 is appropriate.

8

### III. Analysis

¶19    We adopt the rule articulated in <u>McHaffie v. Bunch</u> and hold that where an employer acknowledges vicarious liability for its employee's negligence, a plaintiff's direct negligence claims against the employer are barred.

### A. The <u>McHaffie</u> Rule

### 1. The Development of the <u>McHaffie</u> Rule

¶20    To provide context for our holding, we begin by discussing the development of the rule that a plaintiff cannot maintain direct negligence claims against an employer once the employer acknowledges respondeat superior liability[4] for its employee's alleged negligence.

¶21    Maryland first articulated this rule in <u>Houlihan v. McCall</u>, 78 A.2d 661 (Md. 1951).  In that case, plaintiffs who were injured in a traffic accident sued both the truck driver involved and the driver's employer for negligent hiring or retention.  <u>Id.</u> at 664. Before trial, the employer acknowledged an agency relationship with the truck driver. <u>Id.</u>  The trial court admitted evidence of the driver's driving record at trial, and the jury ultimately found for the plaintiffs.  <u>Id.</u>  Maryland's highest court reversed.  <u>Id.</u> at 666. The court reasoned that because the employer admitted the driver was its agent, "it was quite unnecessary to pursue the alternative theory [of negligence] in order to hold the corporate defendant [liable]."  <u>Id.</u> at 665.  The court therefore concluded the trial court

---

[4] The doctrine of respondeat superior rests on the theory that an employee acting within the scope of his employment acts on behalf of an employer.  In such circumstances, the employer is vicariously liable for the employee's negligent acts.  <u>Raleigh v. Performance Plumbing & Heating, Inc.</u>, 130 P.3d 1011, 1019 (Colo. 2006); <u>Grease Monkey Int'l, Inc. v. Montoya</u>, 904 P.2d 468, 473 (Colo. 1995).

erred by admitting the driver's record because where agency is admitted, an employee's driving record "can serve no purpose except to inflame the jury." Id. at 666.

¶22 Three years after Houlihan, California applied the same rationale to a negligent entrustment claim in Armenta v. Churchill, 267 P.2d 303, 308–09 (Cal. 1954). There, a roadside worker was killed when a dump truck backed over him. Id. at 305. The decedent's family sued the truck driver for negligence and his employer for negligent entrustment. Id. at 308. The employer admitted that the driver was acting in the course of his employment and acknowledged vicarious liability for all damages sustained by the plaintiffs in the event the driver was found negligent. Id. Relevant here, the California Supreme Court affirmed the trial court's exclusion of evidence of the driver's driving history. Id. at 309. The court reasoned that the allegations of direct negligence against the employer (for negligent entrustment) represented merely an alternative theory under which plaintiffs sought to impose upon the employer the same liability as might be imposed upon the employee-driver. Id. Because the employer's admission of vicarious liability removed any issue of her liability for the alleged tort, there remained no material issue to which the evidence of the employee's driving history could be legitimately directed. Thus, the California Supreme Court concluded that the trial court properly excluded this evidence. Id.

¶23 The most frequently cited case articulating this rule is McHaffie v. Bunch, 891 S.W.2d 822 (Mo. 1995). McHaffie was a passenger in a vehicle that crossed a highway median and collided with a tractor-trailer. Id. at 824. McHaffie's guardian (the plaintiff) brought negligence claims against the driver of the vehicle and the driver of

10

the tractor-trailer; the plaintiff also brought vicarious liability claims against the owner-lessor and the operator-lessee of the tractor-trailer for its driver's alleged negligence. Id. The operator-lessee of the tractor-trailer admitted vicarious liability for the tractor-trailer driver's alleged negligence, conceding the driver was acting in the course and scope of his employment at the time of the collision.[5] Id. The plaintiff also claimed that the operator-lessee of the tractor-trailer negligently hired and supervised the tractor-trailer driver and presented evidence that the operator-lessee did not require the driver to have adequate experience, testing, training, and medical evaluations before driving its trucks. Id. The jury assessed fault to the various parties, including ten percent collectively to the driver, the owner-lessor, and the operator-lessee of the tractor-trailer based on the driver's negligence and the owner-lessor's and operator-lessee's vicarious liability, as well as ten percent to the operator-lessee based on negligent hiring.[6] Id. at 825. On appeal, defendants argued that it was improper to permit claims against the operator-lessee based on both respondeat superior liability and negligent hiring. Id.

---

[5] Many courts, including the McHaffie court, use the phrase "admit respondeat superior liability" or "admit vicarious liability" as shorthand for the employer's acknowledgment that the tortfeasor was an employee and was acting in the course and scope of his employment at the time of the alleged negligence. E.g., Willis v. Hill, 159 S.E.2d 145, 157 (Ga. Ct. App. 1967) ("By making the admission the employer says to the plaintiff, 'I stand or fall with my employee; I am liable for whatever damage he may have negligently inflicted.'"), rev'd on other grounds, 161 S.E.2d 281 (Ga. 1968). Such an acknowledgment is not an admission that the employee was in fact negligent.

[6] Seventy percent of fault was assessed to the driver of the passenger vehicle and ten percent of fault to the plaintiff. Id. at 825.

¶24    The McHaffie court agreed. It adopted the "majority view" that once an employer admits respondeat superior liability for a driver's negligence, it is improper to allow a plaintiff to proceed against the employer on other theories of imputed liability. Id. at 826. The court observed that direct negligence claims such as negligent entrustment and negligent hiring are forms of imputed liability, just as respondeat superior is a form of imputed liability, because the employer's duty is dependent on and derivative of the employee's conduct. Id. The court reasoned that to allow multiple theories for attaching liability to a single party for the negligence of another "serves no real purpose," unnecessarily expends the "energy and time of courts and litigants," and risks the introduction of potentially inflammatory, irrelevant evidence into the record. Id. The court also explained that once an employer concedes it is vicariously liable for any negligence of its employee, the employer becomes strictly liable to the plaintiff for damages attributable to the employee's conduct, regardless of the percentage of fault as between the employer and the employee. Id.

¶25    Several state supreme courts have adopted the rule articulated in McHaffie,[7] and numerous intermediate appellate courts[8] and federal district courts[9] in other

[7] State supreme courts that follow this rule include: Maryland (Houlihan, 78 A.2d at 665); California (Armenta, 267 P.2d at 309); Missouri (McHaffie, 891 S.W.2d at 826); Arkansas (Elrod v. G & R Const. Co., 628 S.W.2d 17, 19 (Ark. 1982) (adopting the rule and affirming the trial court's refusal to allow plaintiff's claims of both respondeat superior and negligent entrustment to go to the jury); Idaho (Wise v. Fiberglass Sys., Inc., 718 P.2d 1178, 1181–82 (Idaho 1986) (affirming the trial court's dismissal of direct negligence claims after defendant-employer admitted responsibility for employee's negligence and agreeing with the rationale for the rule as articulated by the Georgia Court of Appeals in Willis, 159 S.E.2d at 158)); and Wyoming (Beavis v. Campbell Cty.

12

jurisdictions have applied the <u>McHaffie</u> rule as well. <u>But see, e.g.,</u> <u>James v. Kelly Trucking Co.</u>, 661 S.E.2d 329, 332 (S.C. 2008) (holding that a plaintiff's direct negligence claims against an employer are not precluded by the employer's admission of respondeat superior liability). Although this case presents an issue of first impression

<u>Mem'l Hosp.</u>, 20 P.3d 508, 516 (Wyo. 2001) (affirming dismissal of claims for negligent hiring and negligent training/supervision)).

[8] <u>E.g.,</u> <u>Clooney v. Geeting</u>, 352 So. 2d 1216, 1220 (Fla. Dist. Ct. App. 1977) (holding that trial court did not err in striking plaintiff's negligent hiring, employment, and entrustment claims against employer where employer acknowledged vicarious liability for employee's negligence); <u>Bartja v. Nat'l Union Fire Ins. Co.</u>, 463 S.E.2d 358, 360–61 (Ga. Ct. App. 1995) (affirming summary judgment on plaintiff's direct negligence claims against employer because employer's admission of liability under respondeat superior rendered direct negligence claims "unnecessary and irrelevant"); <u>Gant v. L.U. Transp., Inc.</u>, 770 N.E.2d 1155, 1160 (Ill. App. 2002) (holding that where employer acknowledges respondeat superior liability for the conduct of its employee, direct negligence claims become duplicative); <u>Rodgers v. McFarland</u>, 402 S.W.2d 208, 210 (Tex. App. 1966) (affirming trial court's exclusion of evidence of direct negligence claims against employer-owner where employer-owner admitted liability for acts of its employee-driver).

[9] <u>E.g.,</u> <u>O'Donnell v. Sullivan</u>, No. 10-CV-00133-LTB-MJW, 2010 WL 2585286, at *1–2 (D. Colo. June 23, 2010) (granting defendant's motion to dismiss claims of negligent entrustment, hiring, training, supervision, and retention); <u>Oaks v. Wiley Sanders Truck Lines, Inc.</u>, No. CIV.A. 07-45-KSF, 2008 WL 5459136, at *1–2 (E.D. Ky. Nov. 10, 2008) (dismissing claims for negligent hiring, training, retention, supervision, and entrustment); <u>Connelly v. H.O. Wolding, Inc.</u>, No. 06-5129-CV-SW-FJG, 2007 WL 679885, at *2–3 (W.D. Mo. Mar. 1, 2007) (dismissing claims for negligent entrustment, hiring, and training); <u>Lee v. J.B. Hunt Transp., Inc.</u>, 308 F. Supp. 2d 310, 315 (S.D.N.Y. 2004) (dismissing claim for negligent hiring); <u>Scroggins v. Yellow Freight Sys., Inc.</u>, 98 F. Supp. 2d 928, 931–32 (E.D. Tenn. 2000) (granting motion to exclude evidence of employee's previous accident history); <u>Hackett v. Wash. Metro. Area Transit Auth.</u>, 736 F. Supp. 8, 10–11 (D.D.C. 1990) (dismissing claims for negligent supervision, hiring, and retention).

13

for this court, we note that at least one federal district court order and three state trial court orders in Colorado have applied the McHaffie rule.[10]

## 2. Rationales for the McHaffie Rule

¶26 We adopt the McHaffie rule because we agree with those courts that hold that where an employer has conceded it is subject to respondeat superior liability for its employee's negligence, direct negligence claims against the employer that are nonetheless still tethered to the employee's negligence become redundant and wasteful.

¶27 Direct negligence claims provide an alternate means of recovery when vicarious liability is unavailable against an employer because the tortfeasor-employee was not acting within the scope of his employment at the time of his alleged negligence. See Richard A. Mincer, The Viability of Direct Negligence Claims Against Motor Carriers in the Face of an Admission of Respondeat Superior, 10 Wyo. L. Rev. 229, 232–33 & n.9 (2010) (citing Plains Res., Inc. v. Gable, 682 P.2d 653, 662 (Kan. 1984) ("The application of the theory of independent negligence in hiring or retaining an employee becomes

---

[10] O'Donnell, 2010 WL 2585286, at *1–2 (order granting defendant-employer's motion to dismiss claims for negligent entrustment and negligent hiring, supervision and retention, citing McHaffie); Benson v. Berenz, No. 04CV1330 (Weld Cty. Dist. Ct. Dec. 13, 2006) (order dismissing claims for negligent hiring, entrustment, and supervision against employer on the condition that employer admit that employee was acting in the course and scope of his employment at the time of the accident, citing McHaffie); Lucero v. Veolia Transp. Inc., No. 10CV8320 (Denver Dist. Ct. July 13, 2011) (order granting employer's motion for partial summary judgment on plaintiff's direct negligence claims where employer admitted respondeat superior liability, citing McHaffie); Rosenthal v. Veolia Transp. Serv., Inc., No. 13CV35317 (Denver Dist. Ct. Aug. 13, 2014) (order denying plaintiff's late motion to amend complaint to add claim for negligent hiring/supervision, reasoning that defendant-employer admitted respondeat superior liability for any negligence by employee).

important in cases where the act of the employee either was not, or may not have been, within the scope of his employment.")).

¶28 But where the employer has already conceded it is subject to respondeat superior liability for any negligence of its employee, direct negligence claims become superfluous. Importantly, to prevail on direct negligence claims against the employer, a plaintiff still must prove that the employee engaged in tortious conduct. That is, tortious conduct by an employee is a predicate in direct negligence claims against the employer. See, e.g., Raleigh v. Performance Plumbing & Heating, Inc., 130 P.3d 1011, 1016 (Colo. 2006) (in negligent hiring cases, the employee's "intentional or non-intentional tort is the predicate for the plaintiff's action against the employer, so proof in the case involves both the employer's and the employee's tortious conduct"); McHaffie, 891 S.W.2d at 825 (elements of negligent entrustment include proof that "the negligence of the entrustor concurred with the negligence of the entrustee to harm the plaintiff"); Rodgers v. McFarland, 402 S.W.2d 208, 210 (Tex. App. 1966) (in a negligent entrustment action, "[t]he driver's wrong . . . first must be established, then by negligent entrustment liability for such wrong is passed on to the owner"). Direct negligence claims effectively impute the employee's liability for his negligent conduct to the employer, similar to vicarious liability.

¶29 An employer's negligent act in hiring, supervision and retention, or entrustment is not a wholly independent cause of the plaintiff's injuries, unconnected to the employee's negligence. A plaintiff has no cause of action against the employer for

15

negligent hiring, for example, unless and until the employee's own negligence causes an accident.

¶30 Stated differently, both vicarious liability and direct negligence claims are tethered to the employee's tortious acts. "Derivative or dependent liability means that one element of imposing liability on the employer is a finding of some level of culpability by the employee in causing injury to a third party." McHaffie, 891 S.W.2d at 825. As one court explained:

> Under either theory, the liability of the principal is dependent on the negligence of the agent. If it is not disputed that the employee's negligence is to be imputed to the employer, there is no need to prove that the employer is liable. Once the principal has admitted its liability under a respondeat superior theory . . . the cause of action for negligent entrustment is duplicative and unnecessary. To allow both causes of action to stand would allow a jury to assess or apportion a principal's liability twice.

Gant v. L.U. Transp., Inc., 770 N.E.2d 1155, 1160 (Ill. App. 2002).

¶31 The pursuit of both vicarious liability and direct negligence claims against an employer after it has conceded respondeat superior liability for any of its employee's negligence is also superfluous to the plaintiff's recovery; the direct negligence claims will not increase the plaintiff's damages. Where an employer acknowledges respondeat superior liability, the employer becomes strictly liable for one hundred percent of the damages attributable to the employee's negligence. McHaffie, 891 S.W.2d at 826. The fact that a plaintiff is the "master of her complaint" and may assert multiple theories of attaching liability to an employer for the employee's conduct does not mean that a plaintiff should be permitted to introduce evidence supporting those multiple theories where such evidence would serve only to establish that which is already undisputed:

16

that the employer is liable for the plaintiff's damages caused by the employee's negligent acts.

¶32 We are also persuaded to adopt the McHaffie rule for two additional reasons. First, evidence necessary to prove direct negligence claims is likely to be unfairly prejudicial to the employee. Houlihan, 78 A.2d at 664–65 ("[W]here agency is admitted, [evidence of a driver's record] can serve no purpose except to inflame the jury."); Clooney v. Geeting, 352 So. 2d 1216, 1220 (Fla. Dist. Ct. App. 1977) ("Since the [direct negligence] counts impose no additional liability but merely allege a concurrent theory of recovery, the desirability of allowing these theories is outweighed by the prejudice to the defendants."); Hackett v. Wash. Metro. Area Transit Auth., 736 F. Supp. 8, 10 (D.D.C. 1990) (dismissing claims for negligent supervision, hiring, and retention as prejudicial and unnecessary). For instance, evidence of an employee's prior convictions for traffic offenses, relevant to the issue of the employer's negligent hiring, may lead a jury to "draw the inadmissible inference that because the [driver] had been negligent on other occasions he was negligent at the time of the accident." Houlihan, 78 A.2d at 665.

¶33 In addition, there is a danger that a jury will assess the employer's liability twice and award duplicative damages to the plaintiff if it hears evidence of both a negligence claim against an employee and direct negligence claims against the employer. Mincer, supra, at 238; see also Thompson v. Ne. Ill. Reg'l Commuter R.R. Corp., 854 N.E.2d 744, 747 (Ill. App. 2006) ("To allow both causes of action to stand would allow the jury to assess or apportion the principal's liability twice."). This is incompatible with the theory of respondeat superior liability, in which the liability of the employer (upon

17

acknowledgement of a respondeat superior relationship) is fixed by the amount of liability of the employee, see Gant, 770 N.E.2d at 1160; McHaffie, 891 S.W.2d at 826, and the plaintiff's comparative fault does not differ based on the number of defendants. The McHaffie rule prevents the fault of one party from being assessed twice and thereby avoids a "plainly illogical" result. McHaffie, 891 S.W.2d at 827.

¶34    We note the McHaffie rule does not apply where the plaintiff's injuries are not in fact caused by the employee's negligence. For example, if an employer is aware its vehicle has defective brakes yet allows an employee to use it and the defective brakes cause an accident, the rule would not apply. The unknowing employee was not negligent, and the employer could not be vicariously liable. "[T]he means of imposing liability on the owner would be through his own negligence of lending the car with bad brakes, i.e., negligent entrustment." Clooney, 352 So. 2d at 1220; see also Willis v. Hill, 159 S.E.2d 145, 159 n.6 (Ga. Ct. App. 1967), rev'd on other grounds, 161 S.E.2d 281 (Ga. 1968). In that situation, the employer's own negligence is both the independent and direct cause of the plaintiff's injuries, unconnected to any negligent act of the employee.

### 3. The McHaffie Rule in a Comparative Negligence Jurisdiction

¶35    Colorado is a comparative negligence jurisdiction. See § 13-21-111, C.R.S. (2016). Pursuant to section 13-21-111, a plaintiff equally or more responsible for her own injuries may not recover damages for negligence from other persons or entities. § 13-21-111(1). However, if the plaintiff is less than fifty percent responsible for her own injuries, she can recover damages for negligence, diminished in proportion to the amount her own negligence contributed to her injuries. Id. The General Assembly's

18

intent behind adopting a comparative negligence regime was to ameliorate the harshness of the common law rule of contributory negligence, which barred recovery by negligent plaintiffs. Mountain Mobile Mix, Inc. v. Gifford, 660 P.2d 883, 888 (Colo. 1983). The focus of the change to comparative negligence was on the conduct of the plaintiff, not the number of defendants who also contributed to the injuries. Id.

¶36     Ferrer contends that the McHaffie rule is inconsistent with Colorado's comparative negligence regime. Ferrer argues that in comparative fault jurisdictions, the acts of all parties must be considered by the jury, and that the McHaffie rule prevents the employer's fault from being considered by the jury. See Lorio v. Cartwright, 768 F. Supp. 658, 660–61 (N.D. Ill. 1991). A small number of courts and some commentators are similarly persuaded the McHaffie rule is incompatible with comparative negligence. See, e.g., id. at 661 ("It would not be possible for a finder of fact to make the necessary determination of degrees of fault without having before it the evidence of the entrustor-principal's negligence in entrusting the vehicle to the entrustee-agent. This court is accordingly of the view that [the McHaffie rule] is no longer viable because of the adoption of comparative negligence."); [11] J.J. Burns, Note, Respondeat Superior as an Affirmative Defense: How Employers Immunize Themselves from Direct Negligence Claims, 109 Mich. L. Rev. 657, 664 (2011). Like Ferrer, they assert the rule fails to account for the fault a jury might apportion to multiple defendants. See Lorio, 768 F. Supp. at 661.

---

[11] Other Illinois district courts have disagreed with the position taken in Lorio, noting that the Illinois Supreme Court has not addressed the issue. See, e.g., Campa v. Gordon Food Servs., No. 01C50441, 2002 WL 1879262, at *1 (N.D. Ill. Aug. 14, 2011).

19

¶37 We are unpersuaded by this minority position. We conclude, as have other courts in comparative negligence jurisdictions, that the McHaffie rule is compatible with Colorado's comparative negligence regime. Where the employer has accepted respondeat superior liability for any negligence of its employee, the employer is strictly liable for the employee's negligence "regardless of the 'percentage of fault' as between the party whose negligence directly caused the injury and the one whose liability for negligence is derivative." McHaffie, 891 S.W.2d at 826. The employer is "responsible for all the fault attributed to the negligent employee, but only the fault attributed to the negligent employee as compared to the other parties to the accident." Gant, 770 N.E.2d at 1159.

¶38 Importantly, a plaintiff's comparative fault should not be reduced based on the number of defendants liable for damages. For example, "[i]n a motor vehicle accident, comparative fault as it applies to the plaintiff should end with the parties to the accident. A plaintiff's comparative negligence remains the same, regardless of whether the remaining fault can be allocated in part to the employer based on negligent entrustment." Id. Thus, if a plaintiff is fifty percent at fault in an accident, her comparative negligence should not be diminished simply because the portion of fault for which she is not responsible may be attributed to two defendants instead of one.

¶39 Indeed, to allow direct negligence claims to proceed after an employer acknowledges respondeat superior liability for its employee's conduct raises a concern that a plaintiff may allege additional direct negligence claims against the employer to convince the jury that he is less at fault than he actually is, thereby recovering damages

20

where the plaintiff might otherwise be disqualified from doing so by section 13-21-111's fifty percent bar. See Mincer, supra, at 258–59.

¶40 For these reasons, we join other courts in concluding that the McHaffie rule accords with a comparative negligence regime. See, e.g., Diaz v. Carcamo, 253 P.3d 535, 544 (Cal. 2011) (reaffirming Armenta, 267 P.2d 303, after the adoption of comparative negligence) ("[T]he objective of comparative fault is to achieve an equitable allocation of loss. That objective is not served by subjecting the employer to a second share of fault in addition to that assigned to the employee and for which the employer has accepted liability."); Loom Craft Carpet Mills, Inc. v. Gorrell, 823 S.W.2d 431, 432 (Tex. Ct. App. 1992) (retaining the McHaffie rule after the adoption of comparative negligence) ("We believe the better rule is to apportion fault only among those directly involved in the accident, and to hold the entrustor liable for the percentage of fault apportioned to the driver."); McHaffie, 891 S.W.2d at 826 (holding that the rule applies regardless of the comparative fault of the employer versus the employee); Gant, 770 N.E.2d at 1159 ("Notwithstanding the fact that Illinois is a comparative negligence jurisdiction, a plaintiff . . . cannot maintain a claim for negligent hiring, negligent retention or negligent entrustment against an employer where the employer admits responsibility for the conduct of the employee under a respondeat superior theory.").

## B. No Exception for Exemplary Damages

¶41 Tort law allows plaintiffs two types of monetary remedies: compensatory damages and exemplary damages. Stamp, 172 P.3d at 448. Compensatory damages are designed to make the plaintiff whole. Kirk v. Denver Publ'g Co., 818 P.2d 262, 265

(Colo. 1991). Exemplary damages, also known as punitive damages, are intended "to punish and penalize [the defendant] for certain wrongful and aggravated conduct and to serve as a warning to other possible offenders." Beebe v. Pierce, 521 P.2d 1263, 1264 (Colo. 1974).

¶42 Exemplary damages are available in Colorado only pursuant to statute. Kaitz v. Dist. Court, 650 P.2d 553, 556 (Colo. 1982). Section 13-21-102 permits exemplary damages "[i]n all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct." § 13-21-102(1)(a) (emphasis added). Willful and wanton conduct is statutorily defined as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regards to consequences, or of the rights and safety of others, particularly the plaintiff." § 13-21-102(1)(b). To assert exemplary damages, the plaintiff must "[establish] prima facie proof of a triable issue." § 13-21-102(1.5)(a).

¶43 A few courts applying the McHaffie rule have recognized an exception for direct negligence claims where the plaintiff seeks exemplary damages. E.g., Plummer v. Henry, 171 S.E.2d 330 (N.C. Ct. App. 1969). Other courts have suggested in dicta that a theoretical exception to the rule may exist where the plaintiff's allegations suffice to allow a claim for exemplary damages against the employer. E.g., Clooney, 352 So. 2d at 1220; Arrington's Estate v. Fields, 578 S.W.2d 173, 178–79 (Tex. Civ. App. 1979), writ refused NRE (July 5, 1979); Bartja v. Nat'l Union Fire Ins. Co., 463 S.E.2d 358, 361 (Ga.

22

Ct. App. 1995); <u>Wise v. Fiberglass Sys., Inc.</u>, 718 P.2d 1178, 1181 (Idaho 1986). However, jurisdictions recognizing a potential exemplary damages exception have done so with little to no analysis, simply citing <u>McHaffie</u>, 891 S.W.2d at 826, for the proposition that "it is . . . possible that an employer or an entrustor may be liable for punitive damages which would not be assessed against the employee/entrustee." <u>See, e.g.</u>, <u>Hill v. W. Door</u>, No. 04-CV-0332-REB-CBS, 2006 WL 1586698, at *1–2 (D. Colo. June 6, 2006) (citing <u>McHaffie</u>, 891 S.W.2d at 826).

¶44    We reject any exception to the rule where the plaintiff asserts exemplary damages against the employer. Such an exception is not logically consistent with the rule. Exemplary damages do not present a separate, distinct cause of action, but rather, depend on an underlying claim for actual damages. <u>See</u> <u>Palmer v. A.H. Robins Co.</u>, 684 P.2d 187, 213–14 (Colo. 1984) ("[I]t is not a separate and distinct cause of action. Rather, it is auxiliary to an underlying claim for actual damages."). Section 13-21-102 "by its own terms . . . has no application in the absence of a successful underlying claim for actual damages." <u>Harding Glass Co., Inc. v. Jones</u>, 640 P.2d 1123, 1127 (Colo. 1982); <u>see also</u> <u>Armijo v. Ward Transp., Inc.</u>, 302 P.2d 517 (Colo. 1956); <u>Ress v. Rediess</u>, 278 P.2d 183 (Colo. 1954). In short, section 13-21-102 "does not create an independent cause of action, but merely authorizes increased damages ancillary to an independent claim for actual damages." <u>Palmer</u>, 684 P.2d at 214.

¶45    As we explain above, where an employer acknowledges respondeat superior liability for any negligence of its employee, the <u>McHaffie</u> rule bars direct negligence claims against the employer. Because any direct negligence claims against the employer

23

are barred, there can be no freestanding claim against the employer on which to base exemplary damages. A plaintiff cannot simply resurrect direct negligence claims against the employer by asserting a claim for exemplary damages against the employer. We therefore decline to recognize any exception to the McHaffie rule for when a plaintiff claims exemplary damages against the employer.

¶46 Moreover, to allow such an exception would present a case management conundrum. Under section 13-21-102, a claim for exemplary damages may not be included in any initial claim for relief. § 13-21-102(1.5)(a). Rather, it "may be allowed by amendment to the pleadings only after the exchange of initial disclosures pursuant to [C.R.C.P. 26] and the plaintiff establishes prima facie proof of a triable issue." Id. A defendant-employer who admits respondeat superior liability in response to the plaintiff's complaint can move for judgment on the pleadings before initial disclosures are exchanged and therefore before the plaintiff can seek to amend his complaint to add exemplary damages claims. If a trial court grants the employer's motion for judgment on the pleadings and dismisses the plaintiff's direct negligence claims under the rule we adopt today, it makes no sense to require a trial court nonetheless to permit discovery on those direct negligence claims because the plaintiff may later seek to assert exemplary damages. Colorado's case management timeline functionally precludes an exception to the rule for exemplary damages against an employer.

¶47 For these reasons, we decline to recognize an exception to the rule for exemplary damages against an employer. We note, however, that this holding does not curtail a

plaintiff's ability to seek exemplary damages against the <u>employee</u> for willful and wanton conduct.

## C. Application

¶48     We affirm all the trial court orders challenged in this petition and therefore discharge the rule.

### 1. Ferrer's Direct Negligence Claims Against Yellow Cab

¶49     Ferrer argues that the trial court erred in dismissing her direct negligence claims against Yellow Cab and urges this court to hold that an employer cannot raise respondeat superior as a defense to direct negligence claims.

¶50     The trial court did not err in granting Defendants' motion for partial judgment on the pleadings and in dismissing Ferrer's direct negligence claims against Yellow Cab.  Yellow Cab admitted that Okbamicael was acting in the course and scope of his employment, thereby conceding respondeat superior liability for any of Okbamicael's alleged negligence.  Yellow Cab will be strictly liable for one hundred percent of Ferrer's damages attributable to Okbamicael's negligent conduct.  Given Yellow Cab's admission of vicarious liability for Ferrer's damages, her direct negligence claims—likewise seeking to attach liability to Yellow Cab for those damages—became duplicative and unnecessary.

¶51     The trial court applied the <u>McHaffie</u> rule to dismiss Ferrer's direct negligence claims against Yellow Cab though this court had not yet adopted that rule.  We adopt the <u>McHaffie</u> rule today and therefore affirm the trial court's order granting Defendants' motion for judgment on the pleadings on Ferrer's direct negligence claims.

## 2. Ferrer's Exemplary Damages Claims Against Yellow Cab

¶52    Ferrer asserts the trial court abused its discretion in denying her motion for leave to amend her complaint to add exemplary damages against Yellow Cab. She contends that she demonstrated prima facie proof of a triable issue of willful and wanton conduct by Yellow Cab.

¶53    A determination of whether the plaintiff has established prima facie proof to add a claim for exemplary damages lies within the sound discretion of the trial court. Stamp, 172 P.3d at 449. Absent an abuse of discretion, a trial court's treatment of a motion to amend will not be disturbed. Id. We will find an abuse of discretion only where the lower court's decision was manifestly arbitrary, unreasonable, or unfair. Dunlap v. People, 173 P.3d 1054, 1094 (Colo. 2007).

¶54    The trial court did not abuse its discretion in denying Ferrer's motion for leave to amend the complaint to add exemplary damages claims against Yellow Cab. Because the trial court properly dismissed Ferrer's direct negligence claims against Yellow Cab, there existed no freestanding claims against Yellow Cab on which Ferrer could base exemplary damages. A plaintiff like Ferrer cannot resurrect independent, direct negligence claims against the employer by asserting exemplary damages. Accordingly, the trial court did not err in denying Ferrer's motion to amend the complaint.

¶55    In any event, the court explained that Ferrer's reliance on an adverse inference from missing driver time sheets (to allege hours of service violations by Yellow Cab) did not suggest willful and wanton conduct by Yellow Cab. The trial court further explained that Ferrer's other allegations about Yellow Cab's direct negligence—for

26

example, that Okbamicael was a repeat violator, that irregularities existed in Yellow Cab's inspection reports, and that Yellow Cab did not use a dispatch system[12]—required "a lot of leaps of faith and a lot of connecting of inferences" and did not amount to sufficient evidence of willful and wanton conduct by Yellow Cab. We conclude the court did not abuse its discretion in concluding that these allegations failed to establish prima facie proof of a triable issue of exemplary damages.

### 3. Ferrer's Exemplary Damages Claims Against Okbamicael

¶56    Ferrer also argues the trial court abused its discretion in denying her motion for leave to amend her complaint to add exemplary damages against Okbamicael. Ferrer cites courts in other jurisdictions that determined excessive speeding or distracted driving to be wanton conduct. She urges this court to hold that the trial court abused its discretion in holding that Ferrer's allegations about Okbamicael's speeding and cell phone use at the time of the collision did not amount to prima facie proof of willful and wanton conduct.

¶57    We cannot conclude that the trial court's denial of Ferrer's motion to add a claim for exemplary damages against Okbamicael was manifestly arbitrary, unreasonable, or unfair. After properly explaining the statutory standard for exemplary damages claims, the trial court concluded that Ferrer's allegations about Okbamicael's speeding failed to establish willful and wanton conduct sufficient to justify exemplary damages. The court further observed that talking on a cell phone while driving is legal in Colorado.

---

[12] We note that many of Ferrer's exemplary damages allegations against Yellow Cab appear unconnected to her claims of negligent entrustment, hiring, retention/supervision, and training of Okbamicael.

27

We conclude the trial court did not abuse its discretion in denying Ferrer's motion to amend the complaint to add exemplary damages against Okbamicael.

## IV.  Conclusion

¶58    We adopt the <u>McHaffie</u> rule followed in other jurisdictions and hold that where an employer acknowledges vicarious liability for its employee's negligence, a plaintiff's direct negligence claims against the employer are barred.  We affirm the trial court orders challenged by Ferrer and discharge the rule.

**JUSTICE GABRIEL** dissents, and **CHIEF JUSTICE RICE** and **JUSTICE HOOD** join in the dissent.

JUSTICE GABRIEL, dissenting.

¶59    I agree with the majority's conclusion that the district court did not abuse its discretion in denying Ferrer's motion for leave to amend her complaint to add a demand for exemplary damages.  Maj. op. ¶ 57.   I disagree, however, with the majority's conclusion that the district court properly dismissed Ferrer's claims against the Colorado Cab Company for negligence, negligent entrustment, negligent hiring, negligent retention/supervision, and negligent training ("direct liability claims") because the cab company conceded vicarious liability for the negligence of its driver, Okbamicael, and therefore, Ferrer's direct liability claims became duplicative and unnecessary.  Id. at ¶ 50.  In my view, the majority has greatly expanded the rule articulated in McHaffie v. Bunch, 891 S.W.2d 822, 826 (Mo. 1995), which the majority purports to adopt and apply, because in applying that rule, the majority implicitly, but incorrectly, assumes that the direct liability claims against the cab company were imputed liability claims, rather than separate and independent negligence claims.  In addition, the majority has overlooked what I believe to be a significant conflict between its ruling and the application of comparative fault principles in cases like this one.  See maj. op. at ¶¶ 35–40.  And the majority's ruling endorses pleading practices that I believe improperly allow a defendant to manipulate a plaintiff's well-pleaded complaint to the defendant's significant advantage.

¶60    For each of these reasons, I respectfully dissent.

1

## I. Analysis

¶61 I first address what the majority calls the "McHaffie rule" and explain why the majority's ruling, which incorrectly assumes that Ferrer's claims against the cab company were derivative in nature, greatly expands that rule. I then discuss why I believe that the majority's ruling is inconsistent with our comparative fault regime. I end by expressing my concern regarding the ramifications that this ruling will have on pleadings practice in Colorado.

### A. The "McHaffie Rule"

¶62 As the majority observes, maj. op. ¶¶ 24–25, several cases have articulated, as a purported "majority view," that once an employer admits liability for an employee's negligence under a respondeat superior theory, a plaintiff may not proceed against the employer on any other theory of imputed liability. See, e.g., Connelly v. H.O. Wolding, Inc., No. 06-5129-CV-SW-FJG, 2007 WL 679885, at *2 (W.D. Mo. Mar. 1, 2007); McHaffie, 891 S.W.2d at 826. The majority deems such cases persuasive and applies them to affirm the district court's dismissal of Ferrer's direct liability claims against the cab company. See maj. op. ¶¶ 26, 48–51. In so holding, the majority asserts that when the cab company conceded its vicarious liability for the driver's conduct, the direct liability claims against the cab company became duplicative and unnecessary. Id. at ¶ 50. For several reasons, I disagree.

¶63 First, what the above-noted cases and the cab company deem the "majority view" (and what the majority calls the "McHaffie rule") is not as well established or universally followed as the cases and the cab company suggest. In James v. Kelly

2

Trucking Co., 661 S.E.2d 329, 332 (S.C. 2008), for example, the South Carolina Supreme Court rejected the rule that the majority adopts here, concluding that South Carolina law does <u>not</u> prohibit a plaintiff from pursuing direct negligence claims against an employer that has admitted respondeat superior liability. In reaching this conclusion, the court observed:

> Just as an employee can act to cause another's injury in a tortious manner, so can an employer be independently liable in tort. In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public. As this recitation suggests, the employer's liability under such a theory does not rest on the negligence of another, but on the employer's own negligence. Stated differently, the employer's liability under this theory is not derivative, it is direct.

<u>Id.</u> at 330–31 (citations and footnote omitted).

¶64    The court further stated:

> In our view, the argument that the court must entirely preclude a cause of action to protect the jury from considering prejudicial evidence gives impermissibly short-shrift to the trial court's ability to judge the admission of evidence and to protect the integrity of trial, and to the jury's ability to follow the trial court's instructions.

<u>Id.</u> at 331.

¶65    And the court opined:

> In our view, it is a rather strange proposition that a stipulation as to one cause of action could somehow "prohibit" completely the pursuit of another. A plaintiff may, in a single lawsuit, assert many causes of action against a defendant. The considerations limiting a plaintiff's available causes of action in the typical case are that the plaintiff must be able to demonstrate a prime [sic] facie case for each cause of action and that a plaintiff may ultimately recover only once for an injury.

3

Id. at 332.

¶66    Other courts have reached similar conclusions, with several observing that what the cab company deems the "majority rule" (and what the majority calls the "McHaffie rule") is not, in fact, followed by the majority of courts; rather, the courts are split on the question presented here. See, e.g., Wright v. Watkins & Shepard Trucking, Inc., 972 F. Supp. 2d 1218, 1220–21 (D. Nev. 2013) (rejecting the "majority approach" and following James); Fairshter v. Am. Nat'l Red Cross, 322 F. Supp. 2d 646, 654 (E.D. Va. 2004) (noting that under Virginia law, claims of respondeat superior and claims of negligent hiring may proceed in the same action); Marquis v. State Farm Fire & Cas. Co., 961 P.2d 1213, 1222 (Kan. 1998) (noting that claims for negligent supervision, hiring, and retention are "negligence separate and distinct from negligence of the driver whose action caused the injury"); MV Transp., Inc. v. Allgeier, 433 S.W.3d 324, 335–36 (Ky. 2014) (following James and adopting the "non-preemption rule"); Jones v. Windham, No. W2015-00973-COA-R10-CV, 2016 WL 943722, at *3–5 (Tenn. Ct. App. Mar. 11, 2016) (describing jurisdictions as "fairly even[ly] split" on the question of whether a plaintiff may proceed with a direct negligence claim against an employer that has admitted vicarious liability and holding that "an employer's admission of vicarious liability does not bar a plaintiff from proceeding against the employer on independent claims of negligence"), cert. granted, (Tenn. Aug. 19, 2016).

¶67    I am persuaded by the reasoning of these cases, and particularly the reasoning of James, and I would follow that reasoning here.

4

¶68    Second, even were I to agree that we should adopt the "McHaffie rule," in my view, it does not apply here.

¶69    As noted above, the "McHaffie rule" bars only those claims against the employer that are based on other theories of imputed liability. See, e.g., Connelly, 2007 WL 679885, at *2; McHaffie, 891 S.W.2d at 826. The cab company's alleged liability in this case, however, is not imputed (or derivative) but direct. Accordingly, notwithstanding the majority's assertions to the contrary, see maj. op. ¶¶ 31, 50, the direct liability claims against the cab company are not duplicative of Ferrer's other claims, nor would the evidence supporting the direct liability claims serve only to establish the cab company's liability for damages arising from the driver's acts. To the contrary, such evidence would be offered to establish the cab company's liability for damages arising from its own acts. See James, 661 S.E.2d at 331; see also 1 Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, The American Law of Torts § 4:10 at 639–40 (2003) (noting that the liability of an owner or bailor for negligent entrustment "does not rest on imputed negligence, but rather is based on his or its own negligence in entrusting the automobile or other instrumentality to an incompetent operator," and thus concluding that "[t]he issue of the owner's or bailor's negligence in entrusting is . . . independent from the preliminary issue of the driver's or operator's negligence") (footnote omitted).

¶70    In addition, as the majority observes, a number of cases have recognized an exception to the "McHaffie rule" when a plaintiff properly alleges willful and wanton conduct justifying an award of exemplary damages. See maj. op. ¶ 43. Although the majority rejects these cases, see id. at ¶ 44, the cases actually illustrate the limitations of

5

the rule that the majority purports to adopt—and they show why claims like those at issue here should be allowed to proceed.

¶71   Specifically, in each of these cases, the court recognized that when direct negligence claims arise from willful and wanton conduct, those claims impose additional liability on parties also alleged to be vicariously liable. Accordingly, in such circumstances, the direct negligence claims are not duplicative of the imputed liability claims, and the willful and wanton tortfeasors should not be excused from liability for their conduct, as the majority's ruling would allow. See, e.g., Clooney v. Geeting, 352 So. 2d 1216, 1220 (Fla. Dist. Ct. App. 1977) (noting that if a theory of liability such as negligent hiring, employment, or entrustment would impose additional liability, as, for example, if the allegations supported a claim for punitive damages, then such a claim could proceed, notwithstanding a claim for vicarious liability, because the negligent hiring, employment, or entrustment claims would not merely allege concurrent theories of recovery); Plummer v. Henry, 171 S.E.2d 330, 334 (N.C. Ct. App. 1969) ("[T]he plaintiff has not only alleged liability of the owner-defendant for compensatory damages on the negligent entrustment theory, but has further alleged facts which, if proved, would justify an award of punitive damages against the owner for his own wanton negligence."); Arrington's Estate v. Fields, 578 S.W.2d 173, 179 (Tex. Civ. App. 1979) (noting that when a plaintiff has alleged ordinary negligence against the driver and gross negligence against the owner for entrusting the vehicle to a reckless or incompetent driver, courts have recognized that the negligent entrustment cause of

action would be "an independent and separate ground of recovery against the owner for exemplary damages").

¶72 In my view, these cases demonstrate that the rule that the majority purports to adopt is not as expansive as the majority states but rather applies only when direct and imputed liability claims are, in fact, duplicative. When, however, such claims are separate and independent (e.g., when, as here, the direct liability claims are not imputed liability claims), then both sets of claims should be allowed to proceed because both the negligence of the employee and the independent negligence of the employer contributed to the plaintiff's injury. To hold otherwise would allow an alleged tortfeasor like the cab company to escape responsibility for independent and direct negligence that the injured plaintiff might ultimately be able to prove at trial.

¶73 Accordingly, even if the "McHaffie rule" could apply in this case, by its own terms, it is inapplicable on the present facts, and the majority's application of that rule in this case substantially expands the rule.

¶74 For these reasons alone, I respectfully disagree with the majority's conclusion that the cab company's admission of vicarious liability bars Ferrer's direct liability claims as a matter of law.

## B. Comparative Negligence

¶75 In concluding that the cab company's admission of vicarious liability bars Ferrer's direct liability claims against the cab company, the majority also overlooks what I believe to be a significant conflict between its ruling and the application of

7

comparative fault principles in cases like this one. For this reason as well, I cannot agree with the majority's analysis.

¶76 Colorado's comparative fault and nonparty-at-fault statutes task the factfinder with determining the degree of negligence of each party and of any properly designated nonparties. See §§ 13-21-111, 13-21-111.5, C.R.S. (2016). The plaintiff's recovery is then reduced in proportion to the amount of negligence attributable to the plaintiff himself or herself. See § 13-21-111(1), (3). If, however, the plaintiff's proportionate fault is equal to or greater than that of the defendant, then the plaintiff recovers nothing. See id.

¶77 In my view, allowing the cab company to manipulate the pleadings in this case so as to eliminate the direct liability claims against it and to collapse those claims into the negligence claims against the driver undermines the foregoing comparative fault regime. An example well illustrates this point.

¶78 If the direct liability claims against the cab company remain in the case and the jury apportions liability equally among Ferrer, the driver, and the cab company, then Ferrer would recover two-thirds of the damages that she is able to prove (because she would be one-third at fault and the driver and cab company, collectively, would be two-thirds at fault).

¶79 If, conversely, the direct liability claims against the cab company are dismissed and those claims are permitted to "collapse into" the claims against the driver, then it appears that the jury would effectively weigh only Ferrer's fault, on the one hand, and the driver's fault, on the other. See Watson v. Reg'l Transp. Dist., 762 P.2d 133, 139–40 (Colo. 1988) (noting that the doctrine of vicarious liability stems from considerations

8

other than the defendant's individual fault and thus rejecting a rule of imputed comparative negligence); Kussman v. City & Cty. of Denver, 706 P.2d 776, 784 (Colo. 1985) (Neighbors, J., concurring) ("[T]he negligence of persons in an imputed negligence relationship ought to be treated as a unit, whether they are plaintiffs or defendants, for purposes of comparative negligence."); see also Laubach v. Morgan, 588 P.2d 1071, 1074 n.13 (Okla. 1978) (noting that in the context of imputed or vicarious liability, "negligence of two or more tortfeasors is treated as a unit, so that so far as the comparative negligence doctrine is concerned it is the same as if only one defendant is involved"). In this scenario (i.e., the direct liability claims against the cab company are dismissed and those claims are permitted to "collapse into" the claims against driver), if the jury finds the parties equally at fault, then it would apportion fifty percent fault to Ferrer and fifty percent fault to the driver, which would prevent Ferrer from recovering anything. See § 13-21-111(1), (3).[1]

¶80     In my view, such a result would be contrary to both the letter and spirit of the comparative fault principles codified in Colorado's comparative fault statute because it would potentially allow negligent parties to evade an apportionment of liability to them by means of creative pleading. I cannot countenance such a result.

---

[1] At oral argument, counsel for the cab company initially appeared to agree with this proposition but then suggested that the jury would still consider the fault of both the driver and the cab company. It is not clear to me why this would be the case, and the case law cited above suggests otherwise. See Watson, 762 P.2d at 139–40; Kussman, 706 P.2d at 784 (Neighbors, J., concurring); Laubach, 588 P.2d at 1074 n.13. Moreover, this argument seems to run contrary to the premise of the cab company's position in this case, namely, that an admission of vicarious liability results in the cab company's taking responsibility for the driver's negligence in exchange for being relieved of any liability for its own direct negligence.

¶81  Notwithstanding the foregoing anomalies, the majority asserts that allowing direct negligence claims to proceed after an employer has acknowledged its vicarious liability raises a concern that a plaintiff may (apparently tactically) allege additional direct negligence claims against the employer to convince a jury that he is less at fault than he actually is.  See maj. op. ¶ 39.  This, in turn, would presumably, albeit inappropriately, allow a plaintiff to overcome section 13-21-111's bar on damages for plaintiffs who are more than fifty percent at fault.  See id.  For three reasons, I am not persuaded.

¶82  First, this argument turns the purpose of comparative negligence on its head.  "The purpose of comparative negligence is to apportion negligence among those who caused harm."  Nat'l Farmers Union Prop. & Cas. Co. v. Frackelton, 662 P.2d 1056, 1059 (Colo. 1983); accord Alhilo v. Kliem, 2016 COA 142, ¶ 69, ___ P.3d ___.  Removing a potentially liable tortfeasor from the comparative negligence calculus, however, would prevent a jury from apportioning negligence among all responsible parties.

¶83  Second, unlike the majority, I do not perceive how including a potentially liable tortfeasor in the comparative fault equation would somehow allow a plaintiff to avoid its own liability.  To the contrary, including all potentially responsible parties in the calculation would allow the jury to allocate the proper degree of fault to each responsible party, including the plaintiff, just as the comparative fault regime envisions.  In contrast, excluding a potentially liable tortfeasor from the equation would increase the risk that a jury would apportion an unjustifiably greater percentage of fault to the plaintiff (because the jury would have fewer parties among whom to apportion

10

liability). This, in turn, would increase the defendant's chances of having a jury apportion fifty percent or more of the liability to the plaintiff, thereby relieving the defendant of liability. See § 13-21-111(1), (3).

¶84 Third, I find the majority's concern for possible litigation tactics by a plaintiff arising from comparative fault principles, see maj. op. ¶ 39, somewhat ironic, given that, as I explain below, this case reflects a defendant's use of litigation tactics to manipulate a plaintiff's well-pleaded complaint to its significant advantage.

¶85 Accordingly, I believe that the majority's ruling is contrary to settled principles of comparative fault.

## C. Pleadings Practice

¶86 Finally, in my view, the majority's ruling endorses the very type of manipulative pleadings practice that the majority purportedly seeks to avoid.

¶87 It is undisputed that the cab company's contract with the driver provided that the driver was an independent contractor and not an employee. Consistent with that, the cab company initially denied that the driver was an employee and affirmatively asserted that he was an independent contractor.

¶88 Apparently later discovering the case law discussed above, which the cab company claims—and the majority now agrees—bars direct liability claims against an employer that has conceded its vicarious liability, the cab company sought to amend its answer to admit, "for purposes of this case only," that at the time of the accident, the driver operated the taxi within the course and scope of his employment.

11

¶89 The district court allowed this amendment, which provided the cab company with a defense that it did not have previously, and then granted the cab company's motion to dismiss Ferrer's direct liability claims, thereby precluding her from obtaining certain otherwise discoverable information. Unlike the majority, for several reasons, I cannot endorse such creative pleading practices.

¶90 First, I am troubled that the cab company's admission of its vicarious liability (1) was inconsistent with its own contract and with its prior admissions and (2) appears to have no factual basis. I am likewise troubled that the district court appears to have disregarded these fundamental flaws in the cab company's argument, despite the court's own observation that the cab company's contract stated that the driver was an independent contractor.

¶91 Second, the majority's ruling allows a defendant to manipulate a plaintiff's pleadings to its significant advantage, contrary to the settled principle that the plaintiff is the master of the complaint and has the right to determine the facts that he or she will allege and the claims that he or she will pursue. See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc., 535 U.S. 826, 831 (2002) (noting that the plaintiff is "the master of the complaint"); see also C.R.C.P. 8(a) (providing that a claimant may seek relief in the alternative or of several different types); C.R.C.P. 18(a) (providing that a party asserting a claim for relief "may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party"); C.R.C.P. 20(a) ("All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same

12

transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.").

¶92 As the South Carolina Supreme Court aptly observed in James, 661 S.E.2d at 332, "[I]t is a rather strange proposition that a stipulation as to one cause of action could somehow 'prohibit' completely the pursuit of another," particularly given that a plaintiff may assert multiple causes of action against a defendant in a single lawsuit. See also C.R.C.P. 8(a) (allowing a claimant to seek relief in the alternative or of several different types).

¶93 I fully agree with the James court's observation. Trial practice is not—and should not be—a game. Nor should this court reward creative pleading practices that make it so. I fear that we have done just that today.

## II. Conclusion

¶94 For these reasons, I respectfully dissent.

I am authorized to state that CHIEF JUSTICE RICE and JUSTICE HOOD join in this dissent.