**Affirmed and En Banc Majority Opinion and En Banc Dissenting Opinions filed May 18, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00967-CV

---

## WERNER ENTERPRISES, INC. AND SHIRAZ A. ALI, Appellants

### V.

## JENNIFER BLAKE, INDIVIDUALLY AND AS NEXT FRIEND FOR NATHAN BLAKE, AND AS HEIR OF THE ESTATE OF ZACKERY BLAKE, DECEASED; AND ELDRIDGE MOAK, IN HIS CAPACITY AS GUARDIAN OF THE ESTATE OF BRIANNA BLAKE, Appellees

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2015-36666**

---

# EN BANC DISSENTING OPINION

A trucking company and its employee appeal the trial court's $116 million judgment awarding personal-injury damages to passengers in a pickup truck involved in a collision with a tractor-trailer owned by the company and driven by its employee. This court should (1) adopt the "Admission Rule," under which an employer's admission that an employee was acting in the course and scope of his

employment when the employee allegedly engaged in negligent conduct bars a party allegedly injured by the employee's negligence from pursuing derivative theories of negligence against the employer, subject to an exemplary-damage exception; (2) conclude that the trial court erred in denying the employer's motion for directed verdict as to all derivative theories against it because the employer admitted that its employee was acting in the course and scope of his employment and because the trial evidence was legally insufficient to support the plaintiffs' gross-negligence allegation; (3) reverse the trial court's judgment, (4) render judgment that the plaintiffs take nothing as to all of their derivative theories of negligence against the employer, and (5) remand the case to the trial court for a new trial. Instead, the en banc majority affirms the trial court's judgment, issuing an opinion in which the en banc majority erroneously concludes that even if this court chose to adopt the Admission Rule, the plaintiffs in today's case would fall within the exemplary-damage exception to this rule because they pleaded gross negligence, even though the evidence was legally insufficient to support a gross-negligence finding. Therefore, I respectfully dissent.

## I.  THE WERNER PARTIES' FIRST ISSUE

In the trial court below, appellees/plaintiffs Jennifer Blake, Individually and as Next Friend for Nathan Blake, and as Heir of the Estate of Zackery Blake, Deceased, and Eldridge Moak, in his capacity as Guardian of the Estate of Brianna Blake (collectively the "Blake Parties") sued appellants/defendants Shiraz A. Ali and Werner Enterprises, Inc. (collectively the "Werner Parties"). In their live pleading, the Blake Parties asserted negligence claims against Ali, alleging that Ali engaged in various acts or omissions that constituted negligence. The Blake Parties also asserted negligence claims against Werner. In addition to asserting that Werner was vicariously liable for Ali's negligence under the doctrine of respondeat

2

superior, the Blake Parties asserted various derivative theories of negligence against Werner. The Blake Parties alleged that Werner, in the operation and maintenance of its vehicles and in its hiring, training, supervising, and directing of its employees and agents, owed a duty to them and the public at large to make use of Werner's property and carry out Werner's operations in a reasonably prudent manner, using ordinary care, skill, and expertise as would an ordinarily prudent commercial motor carrier under the same or similar circumstances, so as not to cause foreseeable and unreasonable risks of harm to others. The Blake Parties asserted that Werner engaged in numerous acts or omissions constituting negligence, including the following:

- failing to adequately train Ali on how to operate an eighteen-wheeler by failing to take various actions,

- failing to adequately supervise Ali while he was operating Werner's commercial motor vehicle,

- assigning and dispatching Ali, who did not have the training and experience to operate a commercial motor vehicle safely under winter-driving conditions, to operate a commercial motor vehicle as part of a driver team on a "Just in Time" run, which Werner knew or should have known would require Ali to operate the Werner tractor-trailer without supervision (because his trainer, Ackerman, would have to be sleeping most of the time Ali was driving) through a large part of west Texas where freezing rain, ice accumulation, and extremely hazardous driving conditions were predicted, creating an unreasonably dangerous situation that posed an extreme risk of serious injury or death to others,

- failing to monitor the weather and road conditions on Interstate 20 after Ali and Ackerman set out on the run from Dallas to Kettleman City,

- failing to advise Ali of the extremely hazardous road and weather conditions in which he was driving,

- failing to instruct Ali to take Interstate 40 rather than Interstate 20 due to the hazardous road and weather conditions predicted for and existing on Interstate 20,

- failing to instruct Ali to slow to a crawl and exit the roadway as soon as it

3

was safe to do so upon encountering the icy road conditions, and

- prohibiting Ali from monitoring the CB radio and Outside Air Temperature gauge for road and weather conditions.

The Blake Parties also alleged that Werner's conduct constituted gross negligence that was a proximate cause of the occurrence in question, resulting in damages to Jennifer Blake and her three children, Nathan, Brianna, and Zackery (collectively the "Blakes"). The Blake Parties sought actual damages against Ali and Werner, as well as exemplary damages against Werner.

During trial Werner stipulated that Ali was acting in the course and scope of his employment at Werner. After the close of all the evidence, the trial court denied various motions for directed verdict asserted by the Werner Parties, including a motion for directed verdict as to the derivative-liability theories of recovery against Werner on the grounds that Werner admitted Ali was acting in the course and scope of his employment at Werner and there was no evidence that Werner was grossly negligent.

The jury answered yes to each of the four liability questions. In response to Question 5, the jury found the following percentages of responsibility: 70% for Werner acting through its employees other than Ali, 14% for Ali, and 16% for Salinas. Because the jury did not unanimously answer "yes" to any of the first three questions, the jury did not answer any of the questions regarding gross negligence and exemplary damages. The trial court rendered a final judgment based on the jury's liability and damage findings and based on the percentages of responsibility found by the jury in response to Question 5. The amounts of actual damages plus prejudgment interest awarded in the trial court's judgment against Werner total approximately $92 million. After adding post-judgment interest, the total amount of the judgment against Werner currently exceeds $116 million.

On appeal this case was submitted to a three-justice panel with oral

4

argument on October 23, 2019. More than twenty months later in July 2021, five justices on this court voted sua sponte to order en banc consideration in the first instance, without the issuance of any panel opinions, even though the panel had generated a majority opinion and a dissenting opinion, each of which stood ready to be issued. *See Werner Enterprises v. Blake*, No. 14-18-00967-CV, 2021 WL 3164005, at *1 (Tex. App.—Houston [14th Dist.] Jul. 27, 2021) (published en banc order). The en banc majority did not give any reasons for using this exceedingly rare procedure at such a late stage of the proceedings. *See id.* The court granted the parties leave to supplement their appellate briefing before this case was submitted to the en banc court on October 28, 2021. By a 5-to-4 vote, the en banc court ordered this submission to be without oral argument, denying without explanation the Werner Parties' request for oral argument to the en banc court. In its opinion today, the en banc majority continues to maintain its silence as to why the court went directly to en banc consideration without oral argument and without allowing the panel opinions to issue. I disagree with the en banc majority that the en banc criteria are satisfied, but even presuming that the en banc criteria are satisfied, the en banc majority has not explained why it did not let the panel opinions issue and then grant en banc reconsideration, which has been the standard practice of this court in such situations. I dissented to the grant of en banc consideration in the first instance for the reasons stated in my Dissent to Order and in Chief Justice Christopher's Dissent to Order, which I joined. *See Werner Enterprises*, 2021 WL 3164005, at *1–2 (Christopher, C.J., dissent to order); *id.* at *2–15 (Wilson, J., dissent to order).

Under their first appellate issue, the Werner Parties argue that (1) the trial evidence is legally and factually insufficient to show that Ali owed any duty to the Blakes; (2) the evidence is legally and factually insufficient to support any finding that Ali was negligent at the time of the occurrence in question or on December 30,

5

2014 (the "Accident Date"); (3) the evidence is legally and factually insufficient to support a finding that any negligence of Ali proximately caused the injuries in question, the accident in question, or the occurrence in question; and (4) Zaragoza "Trey" Salinas, III's losing control of his pickup truck[1] was the sole proximate cause of the accident in question. I agree with and join Part I of Chief Justice Christopher's en banc dissenting opinion, in which she addresses these points. *See ante* at 2–3 (Christopher, C.J., en banc dissenting opinion). Though I do not agree with the en banc majority's analysis of these arguments, I agree that the arguments lack merit and that the first issue should be overruled.

## II. THE BLAKE PARTIES' DERIVATIVE THEORIES OF NEGLIGENCE AGAINST WERNER FAIL AS A MATTER OF LAW UNDER THE ADMISSION RULE.

In their third issue, the Werner Parties note that the Supreme Court of Texas has not yet ruled definitively on the existence, elements, and scope of negligence theories against an employer for the negligent training, negligent supervision, negligent hiring, or negligent retention of an employee, or for related negligence theories, although intermediate courts of appeals have done so. *See JBS Carriers v. Washington*, 564 S.W.3d 830, 842 (Tex. 2018). The Werner Parties assert that, even presuming such theories generally are viable, the negligence theories against Werner based on the acts or omissions of Werner employees other than Ali that the trial court submitted to the jury in Question 1 or Question 2 (the "Question 1 & 2 Theories") fail as a matter of law for various reasons. In arguing one of these reasons, the Werner Parties assert that this court should adopt the rule that the Question 1 & 2 Theories failed as a matter of law because Werner admitted at trial that Ali was acting in the course and scope of his employment at Werner, thus

---

[1] Salinas was driving at a speed of 50 to 60 miles per hour while it was sleeting when Salinas lost control of his truck due to ice on the roadway. Salinas's truck crossed the grassy median dividing the eastbound and westbound lanes of Interstate 20 and entered the westbound lanes.

6

subjecting Werner to vicarious liability under the doctrine of respondeat superior for all damages proximately cause by Ali's negligence. In this opinion the term "Admission Rule" refers to the following rule: if an employer admits that an employee was acting in the course and scope of his employment when the employee allegedly engaged in negligent conduct, that admission bars a party allegedly injured by the employee's negligence from pursuing derivative theories of negligence against the employer.[2]

Before addressing whether this court should adopt the Admission Rule, it is helpful to specify some nomenclature for the analysis. Under the theory of respondeat superior, an employer is vicariously liable for the negligent acts or omissions of its employee if the employee's negligent acts or omissions were within the course and scope of the employee's employment. *See Ineos USA v. Elmgren*, 505 S.W.3d 555, 565 (Tex. 2016). Thus, when an employee acts negligently within the course and scope of employment, respondeat superior permits a person injured by that negligent conduct to sue the employee's employer directly to recover all damages to the injured person proximately caused by the employee's negligence. *See id.*

Vicarious-liability theories such as respondeat superior are not the only means by which an injured party may seek to hold an employer liable for the negligent conduct of an employee. Injured parties may also seek this end by asserting various derivative theories of liability. *See Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 142 (Tex. 1997). Derivative theories are like vicarious theories in that under both theories, the injured party may hold an employer liable for the negligent conduct of an employee. *See Blaine v. National-Oilwell, L.P.*, No. 14-09-00711-CV, 2010 WL 4951779, at *8–9 (Tex.

---

[2] Some courts refer to this rule as the *McHaffie* Rule, based on the Supreme Court of Missouri's opinion in *McHaffie v. Bunch*, 891 S.W.2d 822, 825–27 (Mo. 1995).

App.—Houston [14th Dist.] Oct. 30, 2018, no pet.). Thus, vicarious and derivative theories are both dependent on a finding that the employee's negligence proximately caused damage to the injured party. *See id*. But, derivative theories are different because they involve the additional requirement that the injured party prove some type of negligence by the employer separate from the employee's negligence, which is not required with vicarious theories like respondeat superior. *See id.*

Under derivative theories like negligent training, negligent supervision, negligent hiring, and negligent retention, an employer may be liable for the negligent acts or omissions of an employee if the employer engaged in certain negligent conduct.[3] *See id.* (negligent hiring, negligent training, and negligent retention theories) (mem. op.); *Verinakis v. Medical Profiles, Inc.*, 987 S.W.2d 90, 97–98 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (negligent hiring and negligent supervision theories). Because these theories require negligent conduct by the employer, the employer's liability under these theories is not vicarious. *See Blaine*, 2010 WL 4951779, at *8–9; *Verinakis*, 987 S.W.2d at 97–98. These theories only operate to make the employer liable for an employee's negligence, and even if an employer engages in negligent conduct under these theories, an injured party cannot recover damages against the employer if the employee's negligence did not proximately cause damage to the injured party. *See Alford v. Singleton*, No. 14-17-00504-CV, 2018 WL 5621472, at *4–5 (Tex. App.—Houston [14th Dist.] Oct. 30, 2018, no pet.) (mem. op.); *Blaine*, 2010 WL 4951779, at *8–9; *Verinakis*, 987 S.W.2d at 97–98. Therefore, these derivative theories do not

---

[3] Injured parties may also use vicarious theories and derivative theories in an attempt to hold an employer liable for torts other than negligence. Today's case does not involve such an attempt, so this opinion refers only to theories seeking to hold an employer liable for an employee's negligence.

8

describe an independent basis for recovering against the employer.[4] *See Alford*, 2018 WL 5621472, at \*4–5; *Blaine*, 2010 WL 4951779, at \*8–9.

Under certain circumstances, an injured party in an accident involving an employee may have a viable negligence claim against the employer without tying the recovery to any negligent conduct by the employee. For example, an employer might have negligence liability independent of an employee/driver's negligence if the employer knew or should have known that one of the employer's vehicles had defective brakes, yet the employer allowed the employee to drive the vehicle in the course and scope of employment without warning the employee about the defective brakes. *See Ferrer v. Okbamicael*, 390 P.3d 836, 845–46 (Colo. 2017), *superseded by statute as stated in*, *Brown v. Long Romero*, 495 P.3d 955, 957 n.2 (Co. 2021). If the brakes failed and caused an accident injuring a third party, it might be determined that the employee did nothing wrong but that the employer's negligence proximately caused the accident and the third party's injuries. *See id*. In such a situation, even if no negligence of the employee caused damage to the injured third party, the third party still may recover against the employer for the damages caused by the employer's independent negligence. *See id*. Such independent theories are a third category of theories under which an injured party may seek to hold an employer liable. Sometimes courts or parties may refer to derivative theories and independent theories collectively as "direct theories," in contrast to vicarious theories. This opinion refers to each of the three categories separately: vicarious, derivative, or independent.

An employer's admission that an employee was acting in the course and scope of his employment when the employee allegedly engaged in negligent conduct constitutes an admission that under the doctrine of respondeat superior, the

---

[4] For this reason, the better course is not to call these theories "independent theories" or "independent claims."

9

employer is vicariously liable for the damages proximately caused by the employee's negligence. *See Ineos USA*, 505 S.W.3d at 565. Even if a negligent driver is an employee acting outside the course and scope of employment, the employer may nevertheless be liable under one of the derivative theories. *See Green v. Ransor, Inc.,* 175 S.W.3d 513, 518–19 (Tex. App.—Fort Worth 2005, no pet.). Similarly, an "employer" who hires an independent contractor may be liable for physical harm caused by the contractor's tortious conduct if the plaintiff proves that the "employer" negligently hired the contractor. *See Verinakis*, 987 S.W.2d at 97–98; *Mireles v. Ashley,* 201 S.W.3d 779, 782 (Tex. App.—Amarillo 2006, no pet.). But, derivative theories are dependent on the employee's negligence, so under any of the derivative theories, the injured party must still prove negligence on the part of the employee or contractor. *See Blaine*, 2010 WL 4951779 at *9.

## A.     This court should adopt the Admission Rule.

The parties have not cited and research has not revealed a case from the Supreme Court of Texas or this court in which the court decides whether to apply the Admission Rule. In *JBS Carriers*, the Supreme Court of Texas disposed of the case without having to address petitioners' argument based on the Admission Rule. *See JBS Carriers, Inc.*, 564 S.W.3d at 841, 843. In *Adams Leasing Company v. Knighton*, this court concluded that as to the third and fourth issues, appellants had failed to preserve error in their motion for new trial, as required by the procedural rules then in effect. *See* 456 S.W.2d 574, 576 (Tex. Civ. App.—Houston [14th Dist.] 1970, no writ). Because of this failure to preserve error, the *Adams Leasing* court stated that "Points of error numbers 3 and 4 are not properly before this Court for consideration and both are overruled." After overruling the issues based on failure to preserve error, the court made a statement relating to the fourth issue, without citing any authority. *See id.* (stating, "Nor may a defendant charged with gross negligence in the entrustment of a vehicle preclude proof thereof by

10

stipulating agency on the part of the person to whom such vehicle is entrusted."). Because the fourth issue was not before this court due to failure to preserve error, this gratuitous statement in *Adams Leasing* was not necessary to the determination of the case and was an obiter dictum. *See Air Routing Intern. v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 692–93 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that statement regarding the merits in prior case was an obiter dictum because the court had found that the objection was waived and therefore the prior case did not affect the applicable legal standard). An obiter dictum is not binding and has no precedential value. *See Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 399–400 (Tex. 2016); *Air Routing Intern.*, 150 S.W.3d at 692–93. Thus, whether this court should adopt the Admission Rule is an issue of apparent first impression in this court that the en banc majority should address.

### 1.     *The Development of the Admission Rule*

Maryland's highest court first articulated the Admission Rule in *Houlihan v. McCall*. *See* 78 A.2d 661, 664–65 (Md. 1951). In that case, plaintiffs who were injured in a traffic accident sued both the truck driver involved and the driver's employer, seeking liability against the employer based on respondeat superior, negligent hiring, and negligent retention. *Id.* at 664. Before trial, the employer admitted an agency relationship with the truck driver, under which the employer was vicariously liable for the truck driver's negligence. *Id.* The trial court admitted evidence of the driver's driving record at trial, and the jury ultimately found for the plaintiffs. *Id.* at 664–65. Maryland's highest court reversed, reasoning that because the employer admitted the driver was its agent, "it was quite unnecessary to pursue the alternative theory [of negligent hiring or retention] in order to hold the corporate defendant [liable]." *Id.* at 665. The court concluded the trial court erred by admitting the driver's record because where agency is admitted, an employee's driving record "can serve no purpose except to inflame the jury." *Id.* at 666.

11

Three years after *Houlihan*, the Supreme Court of California applied the same rationale to a negligent-entrustment theory in *Armenta v. Churchill*. *See* 267 P.2d 303, 308–09 (Cal. 1954). There, a roadside worker was killed when a dump truck backed over him. *Id*. at 305. The decedent's family sued the truck driver for negligence and his employer for negligent entrustment. *Id.* at 308. The employer admitted that the driver was acting in the course of his employment and acknowledged the employer's vicarious liability for any tort liability of the driver. *Id*. The *Armenta* court affirmed the trial court's exclusion of evidence of the driver's driving history. *Id*. at 309. The court reasoned that negligent entrustment represented an alternative theory under which plaintiffs sought to impose upon the employer the same liability as might be imposed upon the employee-driver. *Id*. Because the employer's admission of vicarious liability removed any issue of the employer's liability for the driver's alleged negligence, the *Armenta* court concluded there remained no material issue as to which evidence of the employee's driving history could be legitimately directed. *Id*. at 308–09. Thus, the *Armenta* court concluded that the trial court properly excluded this evidence. *Id*.

The most frequently cited case articulating the Admission Rule is *McHaffie v. Bunch*, a case involving facts ironically similar to today's case. *See* 891 S.W.2d 822 (Mo. 1995). McHaffie was a passenger in a vehicle that crossed the median of an interstate highway and collided with a tractor-trailer. *Id*. at 824. McHaffie's guardian brought negligence claims against the driver of the vehicle and the driver of the tractor-trailer. *Id*. The guardian also asserted vicarious-liability theories against the owner-lessor and the operator-lessee of the tractor-trailer, seeking to hold each liable for the tractor-trailer driver's alleged negligence. *Id*. The operator-lessee of the tractor-trailer admitted its vicarious liability for the driver's alleged negligence, conceding the driver was acting in the course and scope of his employment at the time of the collision. *Id*. The guardian claimed that the operator-

12

lessee of the tractor-trailer negligently hired and supervised its driver and presented evidence that the operator-lessee did not require the driver to have adequate experience, testing, training, and medical evaluations before driving its trucks. *Id.* The jury assessed percentages of fault as to the various parties, including ten percent collectively to the driver, the owner-lessor, and the operator-lessee of the tractor-trailer based on the driver's negligence and the owner-lessor's and operator-lessee's vicarious liability, as well as ten percent to the operator-lessee based on negligent hiring. *Id.* at 825. On appeal, the defendants argued that it was improper to allow the guardian to pursue both respondeat-superior and negligent-hiring theories against the operator-lessee. *Id.*

The *McHaffie* court agreed and adopted the Admission Rule as the "majority view." *Id.* at 826. The court observed that derivative theories such as negligent entrustment and negligent hiring are forms of imputed liability, just as respondeat superior is a form of imputed liability, because the employer's duty is dependent on and derivative of the employee's conduct. *Id.* The court reasoned that to allow multiple theories for attaching liability to a single party for the negligence of another "serves no real purpose," unnecessarily expends the "energy and time of courts and litigants," and risks the introduction of potentially inflammatory, irrelevant evidence into the record. *Id.* The *McHaffie* court also explained that once an employer concedes it is vicariously liable for any negligence of its employee, the employer becomes strictly liable to the plaintiff for damages attributable to the employee's conduct, regardless of the percentage of fault as between the employer and the employee. *Id.* The *McHaffie* court noted that potential exceptions might exist to the Admission Rule, such as (1) when the injured party has a viable independent theory of negligence against the employer, and (2) when the injured party seeks exemplary damages against the employer based on the employer's conduct that is the basis of a derivative theory. *Id.* But, the *McHaffie* court did not

13

have to address the existence of any such exceptions to the Admission Rule. *Id*.

Five Texas intermediate courts of appeals have adopted the Admission Rule. *See Rosell v. Central West Motor Stages*, 89 S.W.3d 643, 654–55 (Tex. App.—Dallas 2002, pet. denied); *Estate of Arrington v. Fields*, 578 S.W.2d 173, 178–79 (Tex. App.—Tyler 1979, writ ref'd n.r.e.); *Rodgers v. McFarland*, 402 S.W.2d 208, 210–11 (Tex. Civ. App.—El Paso 1966, writ ref'd n.r.e.); *Luvual v. Henke & Pillot*, *Division of Kroger Co.*, 366 S.W.2d 831, 838 (Tex. Civ. App.—Houston [1st Dist.] 1963, writ ref'd n.r.e.); *Patterson v. East Tex. Motor Freight Lines*, 349 S.W.2d 634, 636 (Tex. Civ. App.—Beaumont 1961, writ ref'd n.r.e.). The parties have not cited and research has not revealed an opinion in which a Texas court has rejected the Admission Rule.

The highest courts of various other states have adopted the Admission Rule. *See Elrod v. G&R Const.*, 628 S.W.2d 17, 19 (Ark. 1982); *Armenta*, 267 P.2d at 309; *Ferrer*, 390 P.3d at 841–47; *Wise v. Fiberglass Sys.*, 718 P.2d 1178, 1181–82 (Idaho 1986); *Sedam v. 2JR Pizza Enters.*, 84 N.E.3d 1174, 1177–79 (Ind. 2017); *Houlihan*, 78 A.2d at 665; *Nehi Bottling Co. v. Jefferson*, 84 So.2d 684, 686 (Miss. 1956); *McHaffie*, 891 S.W.2d at 824–26; *Bogdanski v. Budzik*, 408 P.3d 1156, 1161–64 (Wyo. 2018). Various intermediate appellate courts and United States District Courts in other states and the District of Columbia have done the same. *See Swift v. Old Dominion Freight Lines*, 583 F.Supp.3d 1125, 1134–35 (W.D. Tenn. Jan. 31, 2022) (applying Tennessee law); *Greene v. Grams*, 384 F.Supp.3d 100, 102–06 (D. D.C. 2019) (applying District of Columbia law); *Clooney v. Geeting*, 352 So. 2d 1216, 1220 (Fla. Dist. Ct. App. 1977); *Ortiz v. N.M. State Police*, 814 P.2d 117, 120 (N.M. Ct. App. 1991).[5]

---

[5] In fairness, the cases are not unanimous. The highest courts in Illinois, Kansas, Kentucky, South Carolina, and Utah have not embraced the Admission Rule. *See McQueen v. Green*, 202 N.E.3d 268, 277–80 (Ill. 2022); *Marquis v. State Farm Fire & Cas.*, 961 P.2d 1213, 1224–25

At least eight United States District Court judges have predicted that the Supreme Court of Texas would adopt the Admission Rule if this question were before the high court. *See Bancpass v. Highway Toll Admin.*, 863 F.3d 391, 401 (5th Cir. 2017) (holding that when there is no binding precedent from the Supreme Court of Texas on an issue of Texas law, a federal court must make a prediction of how the Supreme Court of Texas would resolve the issue); *Graham v. Lewis*, 2023 WL 138923, at *2–3 (N.D. Tex. Jan. 9, 2023) (predicting that Supreme Court of Texas would adopt the Admission Rule); *Ordonez v. Ausby*, 2023 WL 310442, at *2–5 (W.D. Tex. Jan. 18, 2023); *Robinson v. Melton Truck Lines*, 2022 WL 174520, at *7 (W.D. Tex. Jan. 18, 2022); *Ochoa v. Mercer Transp. Co.*, 2018 WL 7505640, at *3 (W.D. Tex. December 12, 2018); *Fuller v. Werner Enters.*, 2018 WL 3548886, at *2–3 (N.D. Tex. July 24, 2018); *Sanchez v. Transp. Intern. Tamaulipecos*, 2017 WL 3671089, at *2–3 (S.D. Tex. July 20, 2017); *Sanchez v. Swift Transp. Co.*, 2016 WL 10587127, at *4 (W.D. Tex. Oct. 4, 2016); *Williams v. McCollister*, 671 F.Supp.2d 884, 888–89 (S.D. Tex. 2009).

## 2.     *Rationales for the Admission Rule*

Derivative theories provide an alternate means of recovery when vicarious liability is unavailable against an employer because the employee was not acting within the scope of his employment at the time of his alleged negligence. *See* Richard A. Mincer, *The Viability of Direct Negligence Claims Against Motor Carriers in the Face of an Admission of Respondeat Superior*, 10 Wyo. L. Rev. 229, 232–33 & n.9 (2010).

But, if the employer has admitted that under the doctrine of respondeat

---

(Kan. 1998); *MV Transp. v. Allgeier*, 433 S.W.3d 324, 333–37 (Ky. 2014); *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 631–34 (S.C. 2008); *Ramon v. Nebo Sch. Dist.*, 493 P.3d 613, 618–21 (Utah 2021). The Supreme Court of Louisiana recently ruled similarly, although its decision was based on the unique language of the Louisiana Civil Code and the Louisiana Code of Civil Procedure. *See Martin v. Thomas*, 346 So.3d 238, 241–48 (La. 2022).

superior the employer is subject to vicarious liability for all damages proximately caused by the employee's negligence, the derivative theories become superfluous. *See id.* Significantly, the derivative theories only operate to make the employer liable for the damages proximately caused by the employee's negligence, and even if an employer engages in negligent conduct under these theories, an injured party cannot recover damages against the employer if the employee's negligence did not proximately cause damage to the injured party. *See Alford*, 2018 WL 5621472, at *4–5; *Blaine*, 2010 WL 4951779, at *8–9; *Verinakis*, 987 S.W.2d at 97–98. An employer's negligent conduct in hiring, training, supervising, retaining, or entrusting is not a theory wholly independent of the plaintiff's injuries, unconnected to the employee's negligence. *See Alford*, 2018 WL 5621472, at *4–5; *Blaine*, 2010 WL 4951779, at *8–9; *Verinakis*, 987 S.W.2d at 97–98. Thus, the derivative theories effectively impute the employee's liability for his negligent conduct to the employer, in a manner similar to vicarious liability. *See McHaffie*, 891 S.W.2d at 825–26. Under either respondeat superior or a derivative theory, the liability of the employer is dependent on the negligence of the employee. *See id.* at 826. This is true regardless of the percentage of fault as between the employer and the employee. *See id.* If the employer admits that the employee's negligence is to be imputed to the employer, there is no need to prove that the employer is liable, and thus any derivative theories are duplicative and unnecessary. *See id.* If both theories proceed after the employer admits its vicarious liability, a jury would be allowed to assess or apportion a principal's liability twice. *See id.*

The pursuit of both a vicarious-liability theory and a derivative theory against an employer after it has conceded respondeat-superior liability for the damages proximately caused by the employee's negligence is also superfluous to the plaintiff's recovery; liability under the derivative theory will not increase the plaintiff's recovery. If an employer admits respondeat-superior liability, the

employer becomes liable for one hundred percent of the damages attributable to the employee's negligence. *See Blaine*, 2010 WL 4951779, at \*8–9; *Verinakis*, 987 S.W.2d at 97–98; *McHaffie*, 891 S.W.2d at 826. The fact that a plaintiff is the "master of her complaint" and may assert multiple theories of attaching liability to an employer for the employee's conduct does not mean that a plaintiff should be permitted to introduce evidence supporting those multiple theories where such evidence would serve only to establish that which is already undisputed: that the employer is liable for the damages attributable to the employee's negligence. *See Ferrer*, 390 P.3d at 845.

Two other reasons weigh heavily in favor of adopting the Admission Rule. First, evidence necessary to prove derivative theories is likely to be unfairly prejudicial to the employee. *See Houlihan*, 78 A.2d at 664–65 (stating that "where agency is admitted, [evidence of a driver's record] can serve no purpose except to inflame the jury."); *Clooney*, 352 So.2d at 1220 (asserting that "[s]ince the [counts asserting derivative theories] impose no additional liability but merely allege a concurrent theory of recovery, the desirability of allowing these theories is outweighed by the prejudice to the defendants").

In addition, there is a danger that a jury will assess the employer's liability twice or award duplicative damages to the plaintiff if it hears evidence of both a negligence claim against an employee and derivative theory against the employer. *See* Mincer, *supra*, 10 Wyo. L. Rev. at 238; *McHaffie*, 891 S.W.2d at 826. This is incompatible with the theory of respondeat-superior liability, under which the liability of the employer is fixed by the employee's liability, and the plaintiff's comparative fault does not differ based on the number of defendants. *See Blaine*, 2010 WL 4951779, at \*8–9; *Verinakis*, 987 S.W.2d at 97–98; *Ferrer*, 390 P.3d at 845. The Admission Rule prevents the fault of one party from being assessed twice and thereby avoids a "plainly illogical" result. *See Ferrer*, 390 P.3d at 845;

17

*McHaffie*, 891 S.W.2d at 827. Today's case illustrates this point. Without considering any derivative theories, the jury assessed Salinas's percentage of responsibility at 55% and Ali's percentage at 45%. When the derivative theories submitted under Question 1 were added to the jury's consideration, but not the negligent-training and negligent-supervision theories, the jury set Salinas's percentage of responsibility at only 38%, Ali's percentage at 32%, and Werner acting through employees other than Ali at 30%. Under this assignment of percentages of responsibility, Werner's total responsibility increased 17%. Finally, in the allocation of responsibility on which the trial court rendered judgment, Salinas's percentage of responsibility dropped to 16%, and Werner's total responsibility increased to 84%. Thus, the jury's consideration of all derivative theories effectively increased Werner's total percentage of responsibility by 39%, and by pushing Werner's percentage over 50% effectively made Werner liable for 100% of the damages recoverable by the Blake Parties, rather than the 45% of the Blake Parties' damages under the percentages of responsibility set by the jury without considering any derivative theories. *See* Tex. Civ. Prac. & Rem. Code Ann. §33.013(b).

### 3.     *Compatibility with Civil Practice and Remedies Code Chapter 33*

The Blake Parties argue that Chapter 33 of the Civil Practice and Remedies Code precludes application of the Admission Rule. Section 33.003 provides as follows:

> (a) The trier of fact, as to each cause of action asserted, shall determine the percentage of responsibility, stated in whole numbers, for the following persons with respect to each person's causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these:

18

(1) each claimant;

(2) each defendant;

(3) each settling person; and

(4) each responsible third party who has been designated under Section 33.004.

(b) This section does not allow a submission to the jury of a question regarding conduct by any person without sufficient evidence to support the submission.

Tex. Civ. Prac. & Rem. Code Ann §33.003 (West, Westlaw through 2021 C.S.). The Blake Parties assert that section 33.003 requires that the jury determine the percentage of responsibility of a defendant/employer such as Werner, when the trial evidence raises a fact issue as to whether the defendant/employer by negligent act or omission caused or contributed to cause in any way the harm for which the plaintiffs seek recovery of damages. *See id*. The Blake Parties argue that the Admission Rule conflicts with section 33.003 by preventing the jury from determining a percentage of responsibility for an employer such as Werner based on the employer's negligent conduct under one or more derivative theories.

Courts that have addressed this issue have concluded that in enacting section 33.033, the Texas Legislature did not abrogate the Admission Rule or mandate that the jury determine a percentage of responsibility for defendants who are allegedly liable under theories of vicarious or derivative liability. *See Williams*, 671 F.Supp.2d at 889–92 (applying Texas law); *Conkle v. Chery*, No. 03-08-00379-CV, 2009 WL 483226 at *4–5 (Tex. App.—Austin 2009, no pet.); *Rosell*, 89 S.W.3d at 656–57; *Loom Craft Carpet Mills, Inc. v. Gorrell*, 823 S.W.2d 431, 432 (Tex. App.—Texarkana 1992, no writ); William D. Underwood & Michael D. Morrison, *Apportioning Responsibility in Cases Involving Claims of Vicarious Derivative, or Statutory Liability for Harm Directly Caused by the Conduct of Another*, 55 Baylor L. Rev. 617, 634–36, 642–50 (2003), *but see Bedford v. Moore*,

166 S.W.3d 454, 459–63 (Tex. App.—Fort Worth 2005, no pet.). If under the Admission Rule, an employer is vicariously liable for its employee's negligence and all derivative theories against the employer are barred, section 33.003 does not mandate that the jury determine a percentage of responsibility for the vicariously liable employer. *See Williams*, 671 F.Supp.2d at 889–92; *Conkle*, 2009 WL 483226 at \*4–5; *Rosell*, 89 S.W.3d at 656–57; *Loom Craft Carpet Mills, Inc.*, 823 S.W.2d at 432; William D. Underwood & Michael D. Morrison, *supra*, 55 Baylor L. Rev. at 634–36, 642–50, *but see Bedford v. Moore*, 166 S.W.3d 454, 459–63.

If an employer has admitted respondeat-superior liability for any negligence of its employee, the employer is liable for the damages proximately caused by the employee's negligence, regardless of the comparative fault between the employee and the employer. *See Williams*, 671 F.Supp.2d at 890; *Conkle*, 2009 WL 483226 at \*4; *McHaffie*, 891 S.W.2d at 826; William D. Underwood & Michael D. Morrison, *supra*, 55 Baylor L. Rev. at 634–36. The majority rule from other states supports the proposition that statutes like Chapter 33 do not preclude the adoption or application of the Admission Rule. *See*, *e.g.*, *Diaz v. Carcamo*, 253 P.3d 535, 544 (Cal. 2011) (reaffirming *Armenta* after the adoption of comparative negligence and stating that "the objective of comparative fault is to achieve an equitable allocation of loss. That objective is not served by subjecting the employer to a second share of fault in addition to that assigned to the employee and for which the employer has accepted liability"); *Ferrer*, 390 P.3d at 847 (stating that "we join other courts in concluding that the [Admission Rule] accords with a comparative negligence regime"); *Sedam*, 84 N.E.3d at 1178–79 (stating that "[t]he Comparative Fault Act provides that the jury must apportion fault to those "who caused or contributed to cause the alleged injury" . . . The [Admission Rule] is consistent with this mandate because, as already stated, the [derivative claims] and *respondeat superior* claims are derived from the same negligent act of the

20

employee"); *McHaffie*, 891 S.W.2d at 826 (holding that the Admission Rule applies regardless of the comparative fault of the employer versus the employee); *Swift*, 2022 WL 1810721, at \*5 (holding that the Admission Rule applies under Tennessee law despite Tennessee's system of comparative fault).

The en banc majority should conclude that neither section 33.003 nor the proportionate responsibility regime of Civil Practice and Remedies Code chapter 33 precludes this court from adopting or applying the Admission Rule.

### 4.    *Adopting the Admission Rule*

For the reasons stated above, the en banc majority should join the other Texas intermediate courts of appeals that have adopted the Admission Rule.[6] *See Rosell*, 89 S.W.3d at 654–55; *Estate of Arrington*, 578 S.W.2d at 178–79; *Rodgers*, 402 S.W.2d at 210–11; *Luvual*, 366 S.W.2d at 838; *Patterson*, 349 S.W.2d at 636.

### B.    The en banc court should recognize an exemplary-damage exception to the Admission Rule.

Several courts applying Texas law and courts from other jurisdictions have concluded that the Admission Rule does not apply in cases in which the injured party pursues a negligence claim against the driver, asserts respondeat superior and derivative theories against the employer, and seeks exemplary damages against the employer. *See Monroe v. Freight All Kinds, Inc.*, 2020 WL 6589000, at \*2–3 (W.D. Mo. 2020) (applying Missouri law); *Wilson v. Image Floring*, 400 S.W.3d

---

[6] The Texas Legislature has enacted a statute adopting the Admission Rule as to personal-injury actions in which the claimant sues a defendant who owned, leased, or otherwise held or exercised legal control over a commercial motor vehicle or operator of a commercial motor vehicle involved in an accident. *See* Act of May 28, 2021, 87th Leg., R.S., ch. 785, § 4, 2021 Tex. Sess. Law Serv. 1855, 1856 (codified at Tex. Civ. Prac. & Rem. Code § 72.051, eff. September 1, 2021). But the Legislature determined that this statute applies to such civil actions that are filed on or after September 1, 2021, without commenting on what rule applies to actions that were filed before that date. *See* 2021 Tex. Sess. Law Serv. 1855, 1857–59 (codified at Tex. Civ. Prac. & Rem. Code § 72.054, eff. September 1, 2021); *Graham*, 2023 WL 138923, at \*2, n.4. That statute does not apply to today's case, and this court should adopt the Admission Rule without relying on the statute.

21

386, 391–94 (Mo. App. 2013); *Williams*, 671 F.Supp.2d at 888–89 (applying Texas law); *Rosell*, 89 S.W.3d at 654–55; *Estate of Arrington*, 578 S.W.2d at 178–79. The Blake Parties argue that, if this court adopts the Admission Rule, the court should recognize the exemplary-damage exception and conclude that this case falls within that exception because the Blake Parties sought exemplary damages against Werner based on its alleged gross negligence. The Werner Parties assert that this court should follow courts from other jurisdictions that have adopted the Admission Rule but concluded that no exemplary-damage exception to that rule exists. *See Greene*, 384 F.Supp.3d at 104; *Ferrer*, 390 P.3d at 847–48.

If an injured party seeks exemplary damages against the employer, the injured party must prove by clear and convincing evidence that the harm resulted from the employer's gross negligence, malice, or fraud. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a), (b) (West, Westlaw through 2021 C.S.); *Medina v. Zuniga*, 593 S.W.3d 238, 247 (Tex. 2019). In a case tried to a jury, exemplary damages may be awarded only if the jury unanimously finds that the injured party satisfied this burden of proof. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(d) (West, Westlaw through 2021 C.S.). In many cases, proving the driver's conduct, for which the employer has admitted vicarious liability, will not by itself suffice to prove by clear and convincing evidence that the injured party's harm resulted from the employer's gross negligence, malice, or fraud. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a), (b); *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997) (stating that "the general rule in Texas" is set out in Restatement of Torts section 909, which provides that "[p]unitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if, (a) the principal authorized the doing and the manner of the act, or (b) the agent was unfit and the principal was reckless in employing him, or (c) the agent was employed in a managerial capacity and was acting in the scope of

22

employment, or (d) the employer or a manager of the employer ratified or approved the act"). Thus, an injured party may need to rely on the alleged conduct of the employer on which the injured party bases derivative theories as a basis for proving that the injured party's harm resulted from the employer's gross negligence, malice, or fraud. If so, the derivative theories would not be superfluous, undermining a main basis for the Admission Rule.

If the injured party proves an employer's gross negligence, malice, or fraud by clear and convincing evidence, the employer should be liable for exemplary damages, even if the employer admits to respondeat superior. Nonetheless, even if derivative theories are not superfluous because of the injured party's request for exemplary damages, the other concerns discussed in section II.A.2. above still apply. Evidence necessary to prove derivative theories still is likely to be unfairly prejudicial to the employee. *See Houlihan*, 78 A.2d at 664–65; *Clooney*, 352 So.2d at 1220. A danger still exists that the jury will assess the employer's liability twice or award duplicative damages to the plaintiff if it hears evidence of both a negligence claim against an employee and a derivative theory against the employer. Mincer, *supra*, 10 Wyo. L. Rev. at 238. If a court recognizes an exemplary-damage exception to the Admission Rule, a danger exists that the exception may swallow the rule. *See id.* at 263. If an injured party only needs to allege gross negligence, malice, or fraud and seek exemplary damages to avoid application of the Admission Rule, many injured parties may avoid the Admission Rule by so pleading.

The en banc majority should conclude that an exemplary-damage exception to the Admission Rule exists if the injured party seeks exemplary damages against the employer but that the exception does not apply if the trial evidence is legally insufficient to support a finding by clear and convincing evidence that the harm resulted from the employer's gross negligence, malice, or fraud. *See* Tex. Civ.

Prac. & Rem. Code Ann. § 41.003(a); *Robinson*, 2022 WL 174520, at *2–5, *7 (recognizing exemplary-damage exception to Admission Rule under Texas law but granting summary judgment as to derivative theories under the Admission Rule because plaintiff did not raise fact issue as to plaintiff's gross-negligence allegation); *Ochoa*, 2018 WL 7505640, at *2–3 (recognizing exemplary-damage exception to Admission Rule under Texas law but granting summary judgment as to derivative theories under the Admission Rule because trial court had granted summary judgment as to plaintiff's gross-negligence allegation); *Sanchez*, 2016 WL 10587127, at *2, *4 (same as *Ochoa*); *Cahalan v. May Trucking*, 2012 WL 12915496, at *4–6 (D. Wyo. 2012) (holding under Wyoming law that an exemplary-damage exception to Admission Rule did not apply because there was no evidence that would support an award of exemplary damages against the employer); *Rosell*, 89 S.W.3d at 654–55 (recognizing exemplary-damage exception to Admission Rule under Texas law); *Estate of Arrington*, 578 S.W.2d at 178–79 (same as *Rosell*); Mincer, *supra*, 10 Wyo. L. Rev. at 260–63.

The en banc majority doesn't decide whether this court should adopt the Admission Rule. Rather the majority concludes that it need not address this issue because even if the Admission Rule were adopted, the rule wouldn't apply to today's case because the Blake Parties pled gross negligence and sought exemplary damages. However, the trial evidence was legally insufficient to support a gross-negligence finding, and the trial court erred in denying Werner's motion for directed verdict. So is that all it takes to avoid the Admission Rule per the majority: merely seek exemplary damages? And even if the trial evidence is legally insufficient to support a recovery of exemplary damages, you still get to pursue derivative theories of negligence against the employer even though the employer stipulates to respondeat-superior liability? Yet that's precisely what the majority holds. The majority takes the easy way out and doesn't really decide whether the

24

Admission Rule applies.

**C.** **This court should not make its decisions regarding the Admission Rule apply prospectively only.**

Though the Blake Parties have briefed various issues regarding the Admission Rule, they have not requested that this court make its rulings on these issues apply prospectively only. The en banc majority should address whether this court should exercise its discretion to make the decisions regarding the Admission Rule prospective only, so that they would not apply to today's case.

Judicial decisions generally apply retroactively. *Carrollton-Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489, 515 (Tex. 1992). Occasionally, a court decides to exercise its discretion to depart from this rule by making its decision apply prospectively only. *See id.* at 515, 518. In *Carrollton-Farmers Branch Independent School District*, the Supreme Court of Texas discussed and applied the *Chevron* analysis to determine whether its judicial decision would have only prospective application. *See Carrollton-Farmers Branch Indep. Sch. Dist.*, 826 S.W.2d at 515–521 (applying *Chevron Oil Co. v. Huson*, 404 U.S. 97, 105–09 (1971)). The *Chevron* analysis is a three-step process:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.
>
> Second, . . . [the court] must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.
>
> Finally, [the court must] weig[h] the inequity imposed by retroactive application, for where a decision of [the court] could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the injustice or hardship by a holding of nonretroactivity.

*Id*. at 518 (quoting *Chevron Oil Co.*, 404 U.S. at 106–07).

This court's decisions regarding the Admission Rule would not overrule any past precedent, and they would not decide an issue whose resolution was not clearly foreshadowed. In the trial court and on appeal, the parties have briefed various issues regarding the Admission Rule. At trial, the Blake Parties submitted evidence in an attempt to prove by clear and convincing evidence that the harm with respect to which the Blake Parties sought recovery of exemplary damages resulted from Werner's gross negligence. Before this lawsuit was filed, five Texas intermediate courts of appeals had adopted the Admission Rule. *See Rosell*, 89 S.W.3d at 654–55; *Estate of Arrington*, 578 S.W.2d at 178–79; *Rodgers*, 402 S.W.2d at 210–11; *Luvual*, 366 S.W.2d at 838; *Patterson*, 349 S.W.2d at 636. A federal district court in 2021 decided not to apply the Admission Rule to negligent-supervision claims against the United States of America under the Federal Tort Claims Act based on the considerations present in that case, which are not present in today's case.[7] *See Holcombe v. United States*, 2021 WL 67217, at *27–28 (W.D. Tex. Jan. 6, 2021). The *Holcombe* decision issued after the parties fully briefed this

---

[7] *Holcombe v. United States* is not on point. *See* 2021 WL 67217, at *28 (W.D. Tex. Jan. 6, 2021). The court in that case does not state that there is an exception to the Admission Rule for negligent-supervision claims. *See id*. On the contrary, the *Holcombe* court cites a case applying the Admission Rule to a negligent-supervision claim under Texas law and indicates that the Admission Rule generally applies to negligent-supervision claims. *See id*. at *27 (citing *Williams*, 671 F.Supp.2d at 888–89). The *Holcombe* court decided not to apply the Admission Rule to the negligent-supervision claims in that case based on "the unique posture of claims brought under the [Federal Tort Claims Act] and practical considerations." *See id*. at *27. The *Holcombe* court stressed that claims against the United States of America under the Federal Tort Claims Act are all based on respondeat-superior liability, which is different from the context in which the Admission Rule normally applies. *See id*. at *27–28. The *Holcombe* case involved claims brought against the United States of America stemming from the mass shooting in Sutherland Springs, Texas, and alleging that the shooter should not have been able to purchase the firearms he used in the shooting, but that negligent failures by the United States to collect, handle, and report required information about the shooter allowed him to do so. *See id*. at *1.

appeal. *See id*. Other than that case, research has not revealed any decision applying Texas law in which the court declined to apply the Admission Rule. This court's decisions regarding the Admission Rule would not "establish a new principle of law" as necessary for this court to exercise its discretion to limit the application of the decisions under the first step of the *Chevron* analysis. *See Galloway v. Atrium Medical Center*, 558 S.W.3d 316, 322–23 (Tex. App.—Houston [14th Dist.] 2018, no pet.). In addition, retrospective application of this court's decisions regarding the Admission Rule would further the operation of this rule, and applying these decisions retroactively would not produce substantial inequitable results. *See id*. Under the applicable legal standard, it would not be appropriate for this court to exercise its discretion to make the decisions regarding the Admission Rule apply prospectively only. *See id*.

The en banc majority suggests in various parts of its opinion that the Admission Rule may not be applied to this case because this court had not yet adopted this rule when the trial court denied the Werner Parties directed-verdict motion based on the Admission Rule. *See ante* at 33, 35, 37 (Hassan, J., en banc majority). These suggestions contradict binding precedent under which judicial decisions based on the common law generally apply retroactively. *See Carrollton-Farmers Branch Indep. Sch. Dist.*, 826 S.W.2d at 515; *Galloway*, 558 S.W.3d at 322–23. Notwithstanding the en banc majority's intimations to the contrary, even if the law is unsettled or the issue is one of first impression, an appellate court may hold that a trial court erred or abuse its discretion if the trial court's legal decision is incorrect under the appellate court's interpretation of the law, even though no precedent bound the trial court to follow this interpretation when the trial court ruled. *See In re Silver*, 540 S.W.3d 530, 538 (Tex. 2018); *Galloway*, 558 S.W.3d at 322–23.

**D.** **The en banc majority should hold that as to the derivative theories the trial court reversibly erred in denying Werner's motion for directed verdict based on the Admission Rule.**

The Blake Parties asserted negligence claims against Ali. They asserted that at the time of Ali's negligence, Werner employed Ali, and Ali was acting in the course and scope of his employment with Werner, so that Werner is vicariously liable for Ali's negligence under the doctrine of respondeat superior. The Blake Parties also asserted various Question 1 & 2 Theories against Werner. The Blake Parties alleged that the Werner Parties' conduct constituted gross negligence that was a proximate cause of the occurrence in question resulting in damages to the Blake Parties. The Blake Parties sought actual damages against Ali and Werner, as well as exemplary damages against Werner.

The claims against Ali, the Question 1 & 2 Theories, and the Blake Parties' requests for exemplary damages were tried in an unbifurcated jury trial. At trial Werner stipulated that Ali was acting in the course and scope of his employment with Werner when Ali engaged in the allegedly negligent conduct, thus admitting that under the doctrine of respondeat superior, Werner is vicariously liable for any negligent acts or omissions by Ali. *See Ineos USA, LLC*, 505 S.W.3d at 565. At the close of the evidence at trial, Werner moved for a directed verdict as to all Question 1 & 2 Theories against Werner on the grounds that Werner admitted Ali was acting in the course and scope of his employment at Werner and there was no evidence at trial that Werner was grossly negligent. The trial court denied Werner's motion. Under the Admission Rule, Werner's admission that Ali was acting in the course and scope of his employment with Werner when Ali engaged in the allegedly negligent conduct bars the Blake Parties from pursuing the derivative theories against Werner unless the exemplary-damage exception applies. *See Cahalan*, 2012 WL 12915496, at *4–6; *Williams*, 671 F.Supp.2d at 888–89; *Rosell*,

28

89 S.W.3d at 654–55; *Estate of Arrington*, 578 S.W.2d at 178–79; *Rodgers*, 402 S.W.2d at 210–11; *Luvual*, 366 S.W.2d at 838; *Patterson*, 349 S.W.2d at 636.

As mentioned above, this court should determine that the exemplary-damage exception to the Admission Rule does not apply if the trial evidence is legally insufficient to support a finding that clear and convincing evidence proves the harm with respect to which the injured party seeks recovery of exemplary damages resulted from the employer's gross negligence, malice, or fraud. The Blake Parties did not seek exemplary damages based on any alleged malice or fraud by Werner. Instead, they sought exemplary damages based on Werner's alleged gross negligence. Over Werner's objection that there was no evidence to support the submission, the trial court asked the jury in Question 13 whether the jury unanimously found by clear and convincing evidence that the harm to the Blakes resulted from Werner's gross negligence. Because the jury did not unanimously answer any of the liability questions, the jury followed the trial court's instruction and did not answer this question.

On appeal, the Werner Parties argue that the derivative theories have no validity based on the Admission Rule. The Blake Parties assert that even if the court adopts the Admission Rule, the exemplary-damage exception applies because they sought exemplary damages based on Werner's alleged gross negligence. The Werner Parties assert that (1) no evidence supported a recovery by the Blake Parties of exemplary damages; (2) the Blake Parties' trial strategy of inundating the jury with prejudicial arguments and evidence related to derivative theories against Werner rested largely on the legal question of whether they had a viable gross-negligence claim against Werner; (3) the Blake Parties did not possess a valid gross-negligence claim; (4) the trial court erred in allowing the Blake Parties to use their gross-negligence allegation to evade the Admission Rule; (5) there was no evidence of the required elements of gross negligence in today's case; and (6)

29

the Werner Parties' request for a directed verdict based on the Admission Rule should have been granted. The Werner Parties have sufficiently briefed a challenge to the trial court's denial of their motion for directed verdict as to all Question 1 & 2 Theories against Werner on the grounds that Werner admitted Ali was acting in the course and scope of his employment at Werner and there was no evidence at trial that Werner was grossly negligent. *See Perry v. Cohen*, 272 S.W.3d 585, 588 (Tex. 2008) (holding court of appeals erred by concluding appellant failed to assign error as to special-exceptions order because, under liberal construction of appellant's brief, appellant challenged the order by presenting argument challenging basis of this order, though appellant did not expressly challenge the order). Thus, this court should decide whether the trial evidence was legally sufficient to prove by clear and convincing evidence that the harm with respect to which the Blake Parties sought recovery of exemplary damages resulted from Werner's gross negligence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a).

This legal sufficiency review is conducted under the "clear and convincing" evidence standard. *See U-Haul Intern., v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). "'Clear and convincing' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Civ. Prac. & Rem. Code Ann §41.001(2) (West, Westlaw through 2021 C.S.); *Waldrip*, 380 S.W.3d at 137. The Blake Parties had the burden to prove by clear and convincing evidence that the harm with respect to which the Blake Parties sought recovery of exemplary damages resulted from Werner's gross negligence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a). "'Gross negligence' means "an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual,

30

subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." Tex. Civ. Prac. & Rem. Code Ann §41.001(11); *see Waldrip*, 380 S.W.3d at 137.

Thus, gross negligence consists of both objective and subjective elements. *See Waldrip*, 380 S.W.3d at 137. Under the objective component, "extreme risk" is not a remote possibility or even a high probability of minor harm, but rather the likelihood of the Blakes' serious injury. *See id*. The subjective prong, in turn, requires that Werner knew about the risk, but that the Werner's acts or omissions demonstrated indifference to the consequences of its acts. *See id*. An act or omission that is only thoughtless, careless, or not inordinately risky cannot be grossly negligent. *See Medina*, 593 S.W.3d at 249.

In determining whether the trial evidence was legally sufficient to prove by clear and convincing evidence that the harm with respect to which the Blake Parties sought recovery of exemplary damages resulted from Werner's gross negligence, this court should look at all the trial evidence in the light most favorable to the Blake Parties to determine whether a reasonable trier of fact could have formed a firm belief or conviction that this proposition was true. *See Southwestern Bell Telephone Co. v. Garza*, 164 S.W.3d 607, 627 (Tex. 2004). To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the Blake Parties means that this court must assume that all disputed facts have been resolved in favor of the Blake Parties if a reasonable factfinder could do so. *See id*. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *See id.* This does not mean that a court must disregard all evidence that does not support this proposition. *See id*. Disregarding undisputed facts that do not support this proposition could skew the analysis of whether there is clear and

31

convincing evidence. *See id.* If, after conducting its legal sufficiency review of the trial evidence, this court determines that no reasonable factfinder could form a firm belief or conviction that the harm with respect to which the Blake Parties sought recovery of exemplary damages resulted from Werner's gross negligence, then this court must conclude that the evidence is legally insufficient. *See id.*

During closing argument, counsel for the Blake Parties pointed to the following as evidence of gross negligence: (1) section 2.6.2 of the Texas Commercial Motor Vehicle Drivers Handbook states that on icy roads a commercial driver must reduce the speed "to a crawl" and then stop driving as soon as the driver can safely do so, yet witnesses from Werner testified that section 2.6.2. is a guideline not a rule or standard, thus indicating that Werner thinks Werner and its drivers do not have to follow section 2.6.2. and that Werner and its drivers do not follow this section; (2) despite an accident prior to the accident in question with facts similar to the accident in question, Werner continued to use a business model in which it puts its least-experienced drivers in the most challenging circumstances, pairing them with trainers on "Just in Time" runs in which there is additional pressure to be on-time and in which the least-experienced driver often must be unsupervised because the trainer must be in the truck-tractor's sleeper berth; (3) one of Werner's safety directors testified that he was happy with what Ali did and that in less than one-half of one percent of serious crashes involving a Werner truck could Werner or its driver have done something that reasonably would have prevented the crash, thus showing that in 199 out of every 200 serious crashes Werner says "We did nothing wrong"; (4) Werner's head of safety testified that Werner did nothing wrong and that Werner has not learned any safety lessons from the accident in question; (5) another one of Werner's safety directors testified that Werner has made no changes in its truck-driving schools as a result of the accident in question; and (6) a lawyer for Werner testified that

32

Werner made perfect decisions. After considering the trial evidence under the appliable standard of review, this court should conclude that the trial evidence was legally insufficient to prove by clear and convincing evidence that the harm with respect to which the Blake Parties sought recovery of exemplary damages resulted from Werner's gross negligence.[8] *See Medina*, 593 S.W.3d at 247–50; *Reeder v. Wood Cnty. Energy*, 395 S.W.3d 789, 797 (Tex. 2012); *Waldrip*, 380 S.W.3d at 137–41; *Garza*, 164 S.W.3d at 627; *Robinson*, 2022 WL 174520, at *2–4; *Ruelas v. Western Truck & Trailer Maintenance*, 2019 WL 4060891, at *7–9 (W.D. Tex. 2019); *Cahalan*, 2012 WL 12915496, at *4–6. Therefore, the exemplary-damage exception does not apply, and this court should hold that the trial court erred in denying Werner's motion for directed verdict as to all derivative theories against Werner on the grounds that Werner admitted Ali was acting in the course and scope of his employment at Werner and there was no evidence at trial that Werner was grossly negligent.[9] *See Medina*, 593 S.W.3d at 247–50; *Robinson*, 2022 WL 174520, at *2–4; *Ruelas*, 2019 WL 4060891, at *7–9; *Nat'l Security Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 845–46 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (holding that trial court erred in denying appellant's motion for

---

[8] The Blake Parties did not seek exemplary damages based on any alleged fraud or malice by Werner. In any event, the trial evidence was legally insufficient to prove by clear and convincing evidence that the harm with respect to which the Blake Parties sought recovery of exemplary damages resulted from Werner's fraud or malice.

[9] The en banc majority concludes that the trial evidence is legally sufficient to support (1) a finding of a negligence duty, breach of duty, and causation based on some of the Blake Parties' derivative theories and (2) a finding that Werner's negligent training and supervision proximately caused the accident in question. *See ante* at 38–65 (Hassan, J., en banc majority). But Werner's motion for directed verdict based on the Admission Rule did not challenge the sufficiency of the trial evidence to support the essential elements of any of these negligence theories, and the existence of legally sufficient evidence as to any of these elements would not preclude judgment as a matter of law in favor of Werner as to the derivative theories based on the ground that Werner admitted Ali was acting in the course and scope of his employment at Werner and there was no evidence at trial that Werner was grossly negligent. *See Cahalan*, 2012 WL 12915496, at *4–6.

directed verdict and submitting a claim to the jury despite appellant's argument that the claim was precluded as a matter of law by the defense of estoppel); *Cahalan*, 2012 WL 12915496, at *4–6.

The Blake Parties contend that various independent theories against Werner were submitted to the jury and were a basis of the jury's verdict, including theories based on Werner's alleged negligence in (1) having no system to inform Werner drivers of adverse weather and road conditions, (2) selecting the "dangerous route" followed by the tractor-trailer Ali drove on the Accident Date; (3) failing to notify Ali of a winter storm warning update, and (4) prohibiting Ali from using his citizen's band radio and his outside temperature gauge. The Blake Parties cite no cases holding that any of these theories constitutes an independent theory. To the extent that one or more of the Question 1 & 2 Theories was an independent theory, the trial court did not err in denying Werner's motion for directed verdict because the Admission Rule does not apply to independent theories.[10] *See Ferrer*, 390 P.3d at 845–46; Mincer, *supra*, 10 Wyo. L. Rev. at 260.

The en banc majority states that alleging a defendant engaged in gross negligence "entitle[s] Texas plaintiffs to seek exemplary damages, a theory that was presented to the jury." *Ante* at 35 (Hassan, J., en banc majority). Though a plaintiff alleging gross negligence may seek exemplary damages, that pursuit must come to an end and the gross-negligence issue must not be presented to a jury if there is legally insufficient evidence of gross negligence at trial and the defendant moves for a directed verdict on that ground, as happened in today's case. *See*

---

[10] To adjudicate today's appeal, this court need not and should not determine if any of the Blake Parties' theories are independent theories. My dissenting colleague, Chief Justice Christopher, concludes that this court should not adopt the Admission Rule and indicates that adopting this rule would cause problems in health care liability cases in which a plaintiff asserts a vicarious liability theory and an independent theory against a hospital. In such a scenario, the Admission Rule would provide no impediment to the plaintiff pursuing both a vicarious liability theory and an independent theory. *See Ferrer*, 390 P.3d at 845–46.

*Richard v. Wiatt*, No. 14-22-00236-CV, 2023 WL 3071161, at \*2–6 (Tex. App.—Houston [14th Dist.] Apr. 25, 2023, no pet. h.) (holding that trial court properly granted directed verdict as to plaintiff's gross-negligence theory). A directed verdict eliminates a gross-negligence theory and prevents that theory from being submitted to the jury. *See id.* at \*1–2. A trial court has a duty to grant a motion for directed verdict as to a theory of recovery supported by legally insufficient evidence. *See Rounsaville v. Bullard*, 276 S.W.2d 791, 794 (Tex. 1955); *Cherqui v. Westheimer Street Festival Corp.*, 116 S.W.3d 337, 343 (Tex. App.—Houston [14th Dist.] 2003, no pet.). The trial evidence was legally insufficient to prove by clear and convincing evidence that the harm with respect to which the Blake Parties sought recovery of exemplary damages resulted from Werner's gross negligence. *See Medina*, 593 S.W.3d at 247–50; *Robinson*, 2022 WL 174520, at \*2–4; *Ruelas*, 2019 WL 4060891, at \*7–9. The trial court had a duty to grant Werner's motion for directed verdict based on the Admission Rule. *See Rounsaville*, 276 S.W.2d at 794; *Cherqui,* 116 S.W.3d at 343. The en banc majority asserts that the Blake Parties' gross-negligence claim was viable when the trial court denied Werner's motion for directed verdict, but a gross-negligence claim as to which a trial court is duty-bound to grant a directed verdict is not viable.[11] *See ante* at 35 (Hassan, J., en banc majority); *Rounsaville*, 276 S.W.2d at 794; *Richard*, 2022 WL 3071161, at \*2–6; *Cherqui,* 116 S.W.3d at 343.

The en banc majority also asserts that Werner has failed to contend on appeal that the Blake Parties' gross-negligence theory was not viable when the trial

---

[11] Of course, the same result would be true if a plaintiff asserted a gross-negligence claim and the trial court granted a defendant's motion for summary judgment holding there was no evidence to support a gross-negligence claim. If the trial court holds by either summary judgment or directed verdict that there is insufficient evidence to support a gross-negligence claim, then the Admission Rule precludes submission of any derivative theory of negligence to the jury if the employer has stipulated that the employee was acting in the course and scope of his employment.

court denied Werner's motion for directed verdict. *Ante* at 35 (Hassan, J., en banc majority). In doing so, the en banc majority mischaracterizes the Werner Parties' appellate contentions. The Werner Parties contend on appeal that (1) "[the Blake Parties'] strategy for inundating the jury with prejudicial arguments and evidence related to Werner rested largely on the legal question of whether they had a viable gross negligence claim against Werner"; (2) "[the Blake Parties] did not possess a legally valid gross negligence claim, and the trial court erred in allowing them to push that claim to evade the Admission Rule"; (3) "[t]here is simply no evidence of the required elements of gross negligence here"; (4) "[the Werner Parties'] request for a directed verdict based on the "Admission Rule" should have been granted—it was the only possible hope for salvaging the trial. Without it, the damage to the record and the unfairness of the trial process could not possibly be undone"; (5) "[t]o the extent it exists, the gross-negligence exception to the Admission Rule does not apply"; and (6) "[t]he baseless direct negligence claims were unquestionably harmful and justify a new trial."

The en banc majority states that Werner moved for a directed verdict based upon "the alleged absence of evidence capable of supporting 'the submission in this case of a direct liability claim against Werner because here the fact that Mr. Ali was in the course and scope of his employment as a driver for Werner is not disputed.'" *Ante* at 33 (Hassan, J., en banc majority) (quoting part of Werner's directed-verdict motion). The en banc majority then suggests that Werner is materially misstating the law by failing to mention the exemplary-damage exception to the Admission Rule. *See id*. The en banc majority indicates that Werner's motion for directed verdict relied upon the Admission Rule but did not address the exemplary-damage exception. A quote from Werner's motion for directed verdict shows that this is not the case. In this motion Werner asserted:

We also move for directed verdict on the grounds that there's no

evidence to support the submission in this case of a direct liability claim against Werner because here the fact that Mr. Ali was in the course and scope of his employment as a driver for Werner is not disputed. He was. He was our driver. He was driving our truck that day and there's no evidence that Werner itself was grossly negligent. And I will make a separate motion for directed verdict about that in a minute or two depending how quickly I talk, but we don't believe there's any evidence to support the submission of a direct liability claim against Werner in this case, so we move for directed verdict.

After going back on the record following an off-the-record discussion, counsel for Werner summarized the motion that he had made before the discussion as follows: "I had moved for a directed verdict on the claims against Werner for direct liability because in this case Mr. Ali's employment, he was in the course and scope at the time of this accident. That's not disputed. And there's no evidence that Werner was independently grossly negligent in this case, so we move for directed verdict on those claims." The trial court then denied Werner's motion for directed verdict. Werner has not ignored or overlooked the exemplary-damage exception to the Admission Rule.

The en banc majority does not address whether the trial evidence was legally sufficient to prove by clear and convincing evidence that the harm with respect to which the Blake Parties sought recovery of exemplary damages resulted from Werner's gross negligence. Instead, the en banc majority states that even if the majority chose to adopt the Admission Rule, the majority would conclude that the Blake Parties' allegation of gross negligence suffices to trigger the exemplary-damage exception to the Admission Rule, even if the trial evidence was legally insufficient to support a gross-negligence finding.[12] *See ante* at 35 (Hassan, J., en

---

[12] The en banc majority cites *Cristo v. C.R. England, Inc.* in support of this proposition. *See ante* at 33 (Hassan, J., en banc majority); 2021 WL 801340, at *4 (W.D. Tex. Jan. 7, 2021). The *Cristo* case does not support this proposition. *See Cristo*, 2021 WL 801340, at *4. Instead, the *Cristo* court simply states that other courts have concluded that they should dismiss as a matter

banc majority). Allowing a pleading of gross negligence to trigger an exception to the Admission Rule even though no legally sufficient evidence of gross negligence has been admitted at trial effectively nullifies the Admission Rule in this context. If the Admission Rule bars derivative claims in a case in which the plaintiffs do not allege gross negligence, the result should be the same if the plaintiffs allege gross negligence but the evidence at trial is legally insufficient to support this allegation. *See Robinson*, 2022 WL 174520, at *2–5, *7; *Ochoa*, 2018 WL 7505640, at *2–3; *Sanchez*, 2016 WL 10587127, at *2, *4; *Cahalan*, 2012 WL 12915496, at *4–6.

The en banc majority claims that its version of the exemplary-damage exception maintains the uniformity of this court's jurisprudence in light of this court's opinion in the *Adams Leasing* case. *See ante* at 35 (Hassan, J., en banc majority); *Adams Leasing*, 456 S.W.2d at 576 (stating, "Nor may a defendant charged with gross negligence in the entrustment of a vehicle preclude proof thereof by stipulating agency on the part of the person to whom such vehicle is entrusted."). As discussed above, this gratuitous statement in the *Adams Leasing* opinion was not necessary to the determination of the case and was an obiter dictum; therefore, this statement does not form a part of this court's jurisprudence. *See Air Routing Intern.*, 150 S.W.3d at 692–93. In any event, this statement does not conflict with the adoption of the Admission Rule with an exemplary-damage exception that does not apply if the trial evidence is legally insufficient to support a

of law derivative theories of negligence if the employer does not dispute that its employee was acting in the course and scope of employment and if no viable gross-negligence claims remain. *See id*. The *Cristo* court granted summary judgment as to both the request for exemplary damages and as to the plaintiff's derivative theories of negligence. *See id*. at *2–6. The availability of summary judgment if the summary-judgment evidence does not raise a fact issue on gross negligence and the employer has admitted that its employee was acting in the course and scope of employment does not mean that an employer may not obtain a directed verdict if the trial evidence does not raise a fact issue on gross negligence and the employer has admitted that its employee was acting in the course and scope of employment. The *Cristo* court did not state or imply that an employer may not obtain a directed verdict on a plaintiff's requests for exemplary damages and derivative theories of negligence. *Id*.

gross-negligence finding. *See Adams Leasing*, 456 S.W.2d at 576. The *Adams Leasing* court correctly stated that a stipulation by an employer that its driver was acting as its agent does not render inadmissible evidence otherwise admissible as part of the plaintiff's attempt to prove the employer's alleged gross negligence. *See Adams Leasing*, 456 S.W.2d at 576. If an employer does not want evidence relevant only to its alleged gross negligence or to a derivative theory to be admissible at trial, then the employer may admit that its employee was acting in the course and scope of employment and file a motion for summary judgment asserting there is no evidence of gross negligence and seeking summary judgment as to any derivative theories under the Admission Rule. *See Robinson*, 2022 WL 174520, at *2–5, *7; *Sanchez*, 2016 WL 10587127, at *2, *4; *Cahalan*, 2012 WL 12915496, at *4–6. However, so long as a plaintiff's exemplary-damage request and a derivative theory are before the court, then the employer's admission that the employee was acting as its agent or in the course and scope of employment does not render inadmissible otherwise admissible evidence as part of the plaintiff's attempt to prove the employer's alleged gross negligence or a derivative theory.

The en banc majority also appears to conclude that a directed verdict may only be based on the legal insufficiency of the trial evidence to support an essential element of the challenged liability theory and that a directed verdict may not be based on a legal rule that bars recovery under the challenged liability theory based on the trial evidence. This conclusion is erroneous. *See Hurst*, 523 S.W.3d at 845–46 (holding that trial court erred in denying appellant's motion for directed verdict and submitting a claim to the jury despite appellant's argument that the claim was precluded as a matter of law by the defense of estoppel); *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189–90 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding that the trial court did not err in granting directed verdict as to certain breach-of-fiduciary-duty claims based on the rule

against dividing or fracturing a negligence claim against an attorney, without any determination that the trial evidence was legally insufficient to support an essential element of the breach-of-fiduciary-duty claims at issue).

The trial court based its judgment in part on the jury's finding in response to Question 1, under which the Blake Parties argued various derivative theories, and the jury's finding in response to Question 2 based on the derivative theories of negligent supervision theory and negligent training. If the trial court had granted Werner's motion for directed verdict as to the derivative theories, the trial court would not have submitted the derivative theories in Questions 1 and Question 2 to the jury. The trial court erred in not granting Werner's motion for directed verdict as to these derivative theories. In rendering judgment, the trial court relied on the jury's determination of percentages of responsibility in Question 5, based on the jury's consideration of Werner's negligence as found by the jury in response to Questions 1 and 2. After considering the Blake Parties' many derivative theories the jury assessed Werner's responsibility at 70%, Ali's responsibility at 14%, and Salinas's responsibility at 16% in Question 5. In Question 7, considering only the responsibility of Ali and Salinas, the jury assessed Ali's responsibility at 45% and Salinas's responsibility at 55%. If the trial court had granted the motion for directed verdict, the Blake Parties would not have been able to argue at length during closing arguments about Werner's alleged negligence based on derivative theories, and the jury would not have answered Questions 1, 2, 5, and 6. These arguments and questions concentrated the jury's attention on the derivative theories and probably inflamed the jury against Werner, as shown by the jury's finding in Question 5 (on which the trial court rendered judgment) that Werner's negligence under the derivative theories caused or contributed to the Blake Parties' injuries five times as much as Ali's negligence did and more than four times as much as Salinas's negligence did. *See Shick v. Ill. Dep't of Human Servs.*, 307 F.3d

40

605, 611–14 (7th Cir. 2002). A reasonable probability exists that the trial court's error affected the jury's damage findings in response to Questions 8 through 12. *See* Mincer, *supra*, 10 Wyo. L. Rev. at 238; *Shick*, 307 F.3d at 611–14; *McHaffie*, 891 S.W.2d at 826. Thus, the trial court's error in denying Werner's directed-verdict motion as to the derivative theories probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a); *Kroger Co. v. Guinn*, No. 05-04-01464-CV, 2005 WL 1950887, at *5 (Tex. App.—Dallas Aug. 16, 2005, no pet.) (mem. op.). The trial court reversibly erred in denying Werner's motion for directed verdict as to the derivative theories and in failing to render judgment that the Blake Parties take nothing as to all of their derivative theories, including the negligent-training and negligent-supervision theories.[13] The trial court's error affects all of the matter in controversy and does not affect a part that is severable without unfairness to the parties; therefore, this court may not order a new trial only as to the part affected by the error. *See* Tex. R. App. P. 44.1(b); *Ginn v. Pierce*, 595 S.W.3d 762, 768–69 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). This court should sustain the Werner Parties' Admission Rule arguments discussed above, reverse the trial court's judgment, render judgment that the Blake Parties take nothing as to all of their derivative theories of negligence, and remand the case to the trial court for a new trial, as required by the interests of justice.[14]

---

[13] The en banc majority asserts that this dissenting opinion "insists [this court] must overturn the jury's verdict based on the trial court's implicitly erroneous admission of evidence that tended to prove the Blakes' allegations concerning gross negligence and negligent supervision." *Ante* at 37 (Hassan, J., en banc majority). By thinking that this dissent has erroneously concluded that the trial court abused its discretion in admitting evidence the en banc majority misunderstands this opinion. At no point does this dissenting opinion explicitly or implicitly address whether the trial court erred in making any evidentiary ruling. This dissent's conclusion that the trial court reversibly erred in denying Werner's motion for directed verdict does not imply that the trial court erred in admitting any evidence, and the conclusion is reached after consideration of all the evidence admitted at trial under the standard of review applicable to motions for directed verdict.

[14] As explained in this opinion, I conclude that this court should reverse the trial court's judgment based on the Admission Rule. If the Supreme Court of Texas were to determine that the trial

*See* Tex. R. App. P. 43.3; *Ginn*, 595 S.W.3d at 768–69; *Kroger Co.*, 2005 WL 1950887, at *5.

Instead, the en banc majority affirms the trial court's judgment, issuing an opinion in which the en banc majority erroneously concludes that even if this court were to adopt the Admission Rule, the exemplary-damage exception to this rule would apply because the Blake Parties pleaded gross negligence, even though the trial evidence was legally insufficient to support a gross-negligence finding. As Chief Justice Christopher points out in her dissenting opinion, the en banc majority also applies a negligence-duty analysis that conflicts with the Supreme Court of Texas's requirement that courts imposing a negligence duty on employers must specifically state the negligence duty in question and may not be apply a general-negligence duty. *See ante* at 38–53 (Hassan, J., en banc majority); *ante* at 5–6 (Christopher, C.J., en banc dissenting opinion); *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 506 (Tex. 2017).

### III. CONCLUSION

The en banc majority should adopt the Admission Rule and conclude that an exemplary-damage exception to the Admission Rule exists if the injured party seeks exemplary damages against the employer based on the employer's alleged gross negligence, malice, or fraud, but that the exception does not apply if the trial evidence is legally insufficient to support a finding that clear and convincing evidence proves the harm with respect to which the injured party seeks recovery of exemplary damages resulted from the employer's gross negligence, malice, or fraud. Under the applicable legal standard, it is not appropriate for this court to exercise its discretion to make its decisions regarding the Admission Rule apply

court's judgment should not be reversed based on the Admission Rule, then I conclude that reversal and remand for a new trial would be warranted for the reasons stated in Part II.A of Chief Justice Christopher's en banc dissenting opinion. Therefore I join Part II.A.

42

prospectively only.

The trial court reversibly erred in denying Werner's motion for directed verdict as to derivative theories and in failing to render judgment that the Blake Parties take nothing as to all of the derivative theories, including the negligent-training and negligent-supervision theories. This court should sustain the Werner Parties' Admission Rule arguments, reverse the trial court's judgment, render judgment that the Blake Parties take nothing as to all of their derivative theories of negligence, and remand the case to the trial court for a new trial.[15] Because the en banc majority instead affirms the trial court's judgment, I respectfully dissent.


/s/     Randy Wilson
Justice

En banc court consists of Chief Justice Christopher and Justices Wise, Jewell, Bourliot, Zimmerer, Spain, Hassan, Poissant, and Wilson. Justice Hassan authored the En Banc Majority Opinion, in which Justices Bourliot, Zimmerer, Spain, and Poissant joined. Chief Justice Christopher authored an En Banc Dissenting Opinion, in which Justices Wise, Jewell, and Wilson joined as to Part I and Part II.A for the reasons stated in page 6 and footnote 14 of Justice Wilson's En Banc Dissenting Opinion. Justice Wilson authored an En Banc Dissenting Opinion, in which Justices Wise and Jewell joined.

---

[15] When a party receives favorable jury findings on two or more theories of recovery that yield different damage amounts, that party may elect the theory of recovery upon which the party wishes to recover. *See Birchfield v. Texarkana Mem. Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987). By electing to recover based on one theory, the prevailing party does not waive any alternative theories of recovery and may seek recovery under one of these alternative theories in a motion for rehearing if the appellate court reverses the judgment. *See Boyce Iron Works v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988). After a party seeks recovery under an alternative theory of recovery in a motion for rehearing, any opposing party may respond and assert all objections or arguments that the opposing party has to rendition of judgment based on the alternative theory. *See Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 650, n. 4 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Thus far in this case, no party has addressed whether the Blake Parties properly could make a *Boyce Iron Works* election to recover based on the jury's finding in response to Question 6 or in response to Question 7. *See Energy Maintenance Services Group I v. Sandt*, 401 S.W.3d 204, 218, n.9 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Because this issue is not before the court today, I do not take any position on it. *See id*.